ARTHUR L. ROBBINS *v.* JOHN C. VAN GILDER ET AL.
(14453)
(14454)
(14455)

CALLAHAN, BORDEN, BERDON, KATZ and F. X. HENNESSY, Js.

Argued December 10, 1992—decision released March 30, 1993

*George A. Silvestri III,* with whom, on the brief, was *Edward J. Daly, Jr.,* for the appellants in Docket No. 14453, appellees in Docket Nos. 14454 and 14455 (named defendant et al.).

*Richard L. Albrecht,* with whom were *Ellen Wisser* and, on the brief, *Joram Hirsch* and *Scott A. Hurwitz,* for the appellant in Docket No. 14454, appellee in Docket Nos. 14453 and 14455 (plaintiff).

*Edward Maum Sheehy,* for the appellant in Docket No. 14455, appellee in Docket No. 14454 (defendant Yale-New Haven Hospital).

BORDEN, J. The dispositive issue in these three appeals is whether, under the circumstances of the trial court proceedings, there is a final judgment for purposes of appeal.[1] We conclude that there is no final judgment and, accordingly, dismiss the appeals.

Certain facts and the procedural history are undisputed. On December 30, 1971, the defendant John C. Van Gilder, a neurosurgeon, performed an operation on the plaintiff, Arthur L. Robbins, at the defendant Yale-New Haven Hospital (hospital), in New Haven. On August 17, 1984, Robbins commenced this action by serving Van Gilder, the hospital, and the defendant Yale University (medical school)[2] with a complaint returnable on September 18, 1984.[3]

---

[1] We directed the parties to discuss at oral-argument the question of whether there is a final judgment for purposes of appeal.

[2] The claim against Yale University was based upon the fact that Van Gilder had been, at the time of the operation, an associate professor of neurosurgical medicine at the Yale University School of Medicine. The parties have, therefore, termed this claim as one against the medical school. We do likewise, and refer herein to the defendant university as the medical school.

[3] Also named as defendants were neurosurgeons Joan L. Venes and Daniel C. Good, and nurse anesthetist Patricia Baron. The case was ultimately withdrawn against Venes, Good and Baron, and they are not involved in this appeal. We therefore consider only Van Gilder, the hospital and the medical school as the defendants in this case.

The final version of Robbins' complaint was in three counts. The first count was against all the defendants. In that count, Robbins alleged that Van Gilder, as a member of the hospital's neurosurgical staff, was an employee of the hospital, and was an employee of the medical school as an associate professor of neurosurgical medicine. Robbins alleged that Van Gilder had been negligent in the operation he performed on Robbins on December 30, 1971, and had caused Robbins serious and permanent injury.

In the second count, also against all three defendants, Robbins alleged that Van Gilder had failed to inform him of Van Gilder's negligence. He further alleged that Van Gilder's failure so to inform him, and that Van Gilder's repeated assurances to him that he would fully recover, had fraudulently concealed from him the fact that he had suffered actionable harm. Robbins further alleged that, as a result of that fraudulent concealment, he did not discover and could not have reasonably discovered that he had suffered actionable harm until he received a letter, dated August 2, 1982, informing him that the December 30, 1971 operation had been performed negligently.

The third count was against the hospital only. In that count, Robbins alleged that the hospital had failed to inform him that the operation had been negligently performed and that he had suffered actionable harm. He also alleged that the hospital had failed to monitor its staff and had failed to have a reporting system regarding the negligence of its staff that would have informed him that he had suffered actionable harm. He further alleged that the hospital had been engaged in a continuous course of conduct, consisting of treatment of him for the injuries he had suffered in the December 30, 1971 operation, and that, as a result, the statute of limitations governing his cause of action does not begin to run until that course of conduct ceases.

The defendants all pleaded the statute of limitations as a special defense, as well as denying the essential allegations of the complaint.[4] In reply, Robbins alleged that: (1) the defendants should be estopped from asserting the statute of limitations because, due to their negligence, he had suffered brain damage that affected his ability to understand completely the nature and extent of what had happened to him, and to understand whether he could have had a claim for damages against the defendants; (2) the statute of limitations, General Statutes § 52-584,[5] would be unconstitutional if applied to him; and (3) as to Van Gilder, the statute of limitations had been tolled in part pursuant to General Statutes § 52-590.[6]

On these pleadings, the case was tried to a jury in February and early March, 1991. At the end of the plaintiff's case and at the end of all the evidence, the defendants moved for directed verdicts in their favor. The trial court, *D. Dorsey, J.*, reserved decision on these motions.

[4] Furthermore, Van Gilder and the hospital moved for summary judgment upon the basis of the statute of limitations. The trial court, *Cretella, J.*, denied these motions.

[5] General Statutes § 52-584 provides: "LIMITATION OF ACTION FOR INJURY TO PERSON OR PROPERTY. No action to recover damages for injury to the person, or to real or personal property, caused by negligence, or by reckless or wanton misconduct, or by malpractice of a physician, surgeon, dentist, podiatrist, chiropractor, hospital or sanatorium, shall be brought but within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered, and except that no such action may be brought more than three years from the date of the act or omission complained of, except that a counterclaim may be interposed in any such action any time before the pleadings in such action are finally closed."

[6] General Statutes § 52-590 provides: "WHEN DEFENDANT'S ABSENCE FROM STATE TO BE EXCLUDED. In computing the time limited in the period of limitation prescribed under any provision of chapter 925 or this chapter, the time during which the party, against whom there may be any such cause of action, is without this state shall be excluded from the computation, except that the time so excluded shall not exceed seven years."

The trial court submitted to the jury five special interrogatories, described and discussed infra. In its instructions to the jury, the trial court ordered the jury to return verdicts for the defendants on the second and third counts, for the following reasons. With respect to the second count, based on fraudulent concealment, the trial court stated that the claim "is subsumed in the plaintiff's reply to the statute of limitations defense . . . that [the] defendants fraudulently concealed [the] plaintiff's cause of action. It would only confuse you if I left the Second Count in the case and the removal does not, in fact, prejudice the plaintiff."

With respect to the third count, alleging independent negligence against the hospital and a continuous course of treatment by the hospital to overcome the statute of limitations defense, the trial court stated that the independent negligence claim failed for lack of expert testimony. With respect to the continuing course of treatment allegation, the court stated that "[t]his claim is also subsumed in plaintiff's reply to the special defense of the defendant. This states the defendant continuously treated the plaintiff on or about December, 1971, and through and beyond July, 1984. Here again, permitting this to remain would cause confusion. Its removal from the complaint will not prejudice the defense since my instruction put this claim as well as fraudulent concealment in proper perspective under the reply. Therefore I'm directing you to return a defendant's verdict on the Third Count."

On March 11, 1991, the jury returned a verdict on the first count (1) in favor of the plaintiff, in the amount of $1,550,000, against Van Gilder and the medical school, and (2) in favor of the hospital.[7] With regard

---

[7] The two verdict forms returned by the jury on the first count, dated and signed by the foreperson, were as follows: (1) a plaintiff's verdict form, indicating that the jury had found the issues in favor of Robbins as against Van Gilder and the medical school, and finding the damages to be $1,550,000;

to that count, however, the jury also answered the five special interrogatories submitted to it as follows: (1) Van Gilder was negligent in connection with the surgery he performed on Robbins on December 30, 1971; (2) Van Gilder's negligence was the proximate cause of Robbins' injuries and the damages claimed by Robbins; (3) Van Gilder was an agent of *the hospital* in connection with the surgery; (4) the claims of Robbins as to negligence and damages in connection with the performance of the surgery *were barred* by the statute of limitations; and (5) Robbins had *not* proven by clear, precise and unequivocal evidence that Van Gilder had fraudulently concealed the fact that Robbins "had suffered some form of actionable harm during the course of the surgery on December 30, 1971, so as to toll or suspend the statute of limitations."[8] The ver-

and (2) a defendant's verdict form finding the issues for the hospital. The record also discloses verdict forms for the defendants on the second and third counts, in accordance with the trial court's instructions, signed by the foreperson and dated March 12, 1991.

[8] More specifically, the interrogatories and answers thereto were as follows:

"Interrogatories For Jury

1. Was the defendant Dr. John Van Gilder negligent in connection with the surgery he performed on the plaintiff Arthur Lee Robbins (plaintiff) on December 30, 1971, as alleged in Count One of the Substituted Amended Complaint?

Answer     YES

2. If you find the defendant Dr. John Van Gilder was negligent in connection with the performance of the surgery on the plaintiff on December 30, 1971, was such negligence the proximate cause of the injuries and damages claimed by the plaintiff in paragraphs 12, 13 and 14 of Count One of the Substituted Amended Complaint?

Answer     (NEGLIGENT) YES

3. Was the defendant Dr. John Van Gilder an employee or agent of the defendant Yale-New Haven Hospital in connection with the surgery which he performed on the plaintiff on December [30], 1971?

Answer     AGENT

4. Are the claims of the plaintiff as to negligence and damages in connection with the performance of the surgery on December 30, 1971, as

dict and the interrogatories conflicted with each other, therefore, in at least the following ways: (1) the verdict found Van Gilder and the medical school liable to Robbins, despite the specific findings that Robbins' claim was barred by the statute of limitations and that Robbins had not proven that Van Gilder had fraudulently concealed the cause of action; and (2) the verdict found the medical school, but not the hospital, liable as Van Gilder's principal, despite the specific finding that Van Gilder had been the agent of the hospital.

After the clerk read the verdict and inquired of the jury whether it was their verdict,[9] the court directed the clerk to read the interrogatories and answers. The trial court thereupon informed the jury that it could not accept the verdict because the verdict was inconsistent with the answers to the interrogatories regarding the statute of limitations, and returned the jury to the deliberation room for reconsideration of its verdict and its answers to the interrogatories.[10]

---

set forth in Count One of the Substituted Amended Complaint, barred by the statute of limitation?

    <u>Answer</u>    YES

    5. Did the plaintiff prove by 'clear, precise and unequivocal evidence' that the defendant Dr. John Van Gilder fraudulently concealed the fact that the plaintiff had suffered some form of actionable harm during the course of the surgery on December 30, 1971, so as to toll or suspend the statute of limitations?

    <u>Answer</u>    NO"

  [9] The clerk asked: "Ladies and Gentlemen of the jury, is this your verdict so say you all?" The jury answered "Yes."

  [10] The court instructed the jury: "Ladies and Gentlemen, I can't [accept] your verdict because there is a complete inconsistency between the interrogatories and the verdict forms. And the inconsistency consists of the fact that you found that the action was tolled by the statute of limitations, which means that it was barred by the statute of limitations. And then—the only way then that it could—that you could find that the plaintiff could recover would be if you found fraud. If you found that there was no fraud, then you could not allow any verdict for the plaintiff. So, I cannot [accept] your verdict form under those circumstances. That is why the interrogatories were submitted to you, to determine whether you had considered all of the elements of negligence, approximate [sic] cause, statute of limitations and

Van Gilder, the medical school and the hospital then moved for directed verdicts in their favor, upon the basis of the jury's answers to the interrogatories, and Robbins moved that the court accept the jury's verdict, irrespective of those answers. After the court denied the defendants' motions for a directed verdict, Van Gilder and the medical school moved for a mistrial upon the basis of the jury's confusion. The court took no action on Robbins' motion to accept the verdict, or on Van Gilder's and the medical school's motion for a mistrial.

At that point, the jury submitted the first of what would ultimately be five written questions or other communications to the court. This first question asked: "Why does an award for negligence have to be combined with fraudulent concealment[?] We thought they were two separate issues. We were awarding for negligence exclusive of fraudulent concealment." Van Gilder and the medical school thereupon renewed their motion for a directed verdict and, after the court denied that motion, renewed their motion for a mistrial.

The jury then submitted the second question to the court: "What constitutes medical fraud?" At that point all three defendants—Van Gilder, the medical school and the hospital—moved for a mistrial. The trial court then returned the jury to the courtroom and reinstructed it, in response to the jury's first question, on the issue of the statute of limitations and the relationship between that issue and the issue of fraudulent con-

---

fraud and agency. Secondly, if you found that you—that Dr. Van Gilder was the agent of the Yale-New Haven Hospital, you would have to logically, and consistently find that the Hospital was also responsible. And under those circumstances you found just the opposite. So, I am going to ask you to go back and reconsider your verdict in this particular case, in view of the interrogatories and I am going to ask you to reconsider the whole thing the interrogatories as well, as well as the verdict. But, again, if the claim is barred by the statute of limitations, there can be no recovery unless there—unless fraud was proven. So, I'll send you back to reconsider."

cealment. In the course of those instructions, moreover, the court explained why the jury's answer to the interrogatory regarding Van Gilder's agency was inconsistent with its verdict.[11] The court then provided the jury with new verdict forms and a clean set of the same interrogatories.

At that point the jury submitted the following request: "To reconsider medical fraud we would like our second question answered." The court then, again, returned the jury to the courtroom and reinstructed it on the relationship between the statute of limitations defense and issue of fraudulent concealment of a cause of action. The defendants then renewed their motions for a directed verdict and, in the alternative, a mistrial. The court denied these motions.

The jury then submitted the following statement to the trial court: "We understood that the statute of limitations was barred if the lawsuit was brought within two to three years after discovery[.] We believe discovery is 1982." The defendants again renewed their motions for a mistrial. The court then returned the jury to the courtroom once again and, after informing the jury that its note was not in the form of a question, read the statute of limitations; see footnote 5; to the jury. The court then instructed the jury that "I don't know what your question is, from reading this [note]. If you have a question you'll have to write it out." The jury orally informed the court: "By reading the statute you answered the question." The court then adjourned for the day.

The next day, March 12, 1991, began with the fifth of the jury's written communications to the court: (1)

---

[11] None of the parties raises any question regarding the legal propriety, accuracy, clarity or completeness of the trial court's original instructions on the statute of limitations, or regarding the reinstructions by the trial court.

"Could we have a copy of the law on fraud? [2] If we can't we would like to here [sic] you (the judge) talk about the law on fraud again? [3] Could we also here [sic] about the statute of limitations? Or a copy of?" The defendants then renewed their motions for a directed verdict. The plaintiff urged the court to follow the procedure provided in General Statutes § 52-223.[12] The defendants objected to that procedure, and again renewed their motions for a directed verdict or, in the alternative, suggested that "the judgment has to be made at this point that this situation is so far out of control and that there just isn't any judicial way to resolve it, here and now, other than by way of a mistrial." The court then stated that "I have given consideration to the verdict forms, to the interrogatories, the series of questions from the jury. And I am convinced that the jury is hopelessly confused." The court, therefore, declared a mistrial.

Thereafter, the parties filed the following written motions: (1) the plaintiff moved for judgment against the defendants in the amount of $ 1,550,000, in accordance with the jury's verdict; (2) the defendants moved for a directed verdict notwithstanding the failure of the jury to return a verdict, pursuant to Practice Book § 321;[13] and (3) the defendants moved for judgment in

---

[12] General Statutes § 52-223 provides: "JURY MAY BE THREE TIMES RETURNED TO CONSIDER VERDICT. The court may, if it judges the jury has mistaken the evidence in the action and has brought in a verdict contrary to the evidence, or has brought in a verdict contrary to the direction of the court in a matter of law, return them to a second consideration, and for the same reason may return them to a third consideration. The jury shall not be returned for further consideration after a third consideration."

[13] Practice Book § 321 provides: "RESERVATION OF DECISION ON MOTION FOR DIRECTED VERDICT

"Whenever a motion for a directed verdict made at any time after the close of the plaintiff's case in chief is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. The defendant may offer evidence in the event the motion is not granted, without hav-

accordance with their motions for a directed verdict, based upon the jury's answers to the interrogatories regarding the statute of limitations. In a written memorandum of decision, the trial court denied all the motions, maintaining its order of a mistrial.

The parties thereafter took the following appeals to the Appellate Court, which we transferred to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). Van Gilder and the medical school filed an appeal, Docket No. 14453, claiming that the trial court improperly (1) denied the motions for summary judgment; see footnote 4; (2) denied their motions for a directed verdict made at the close of the plaintiff's case and at the close of all the evidence; and (3) denied their posttrial motions for judgment. In response, Robbins argues that: (1) a denial of a motion for summary judgment is not reviewable on appeal after a full trial on the merits; see *Greengarden* v. *Kuhn,* 13 Conn. App. 550, 552, 537 A.2d 1043 (1988); and (2) Van Gilder's and the medical school's second and third claims are not reviewable "for lack of a final judgment," based upon the authority of *Gold* v. *Newman,* 211 Conn. 631, 560 A.2d 960 (1989).

Robbins filed an appeal, Docket No. 14454, claiming that: (1) the trial court should have granted his motion

ing reserved the right to do so and to the same extent as if the motion had not been made. After the acceptance of a verdict and within the time stated in Sec. 320 for filing a motion to set a verdict aside, a party who has moved for a directed verdict may move to have the verdict and any judgment rendered thereon set aside and have judgment rendered in accordance with his motion for a directed verdict; or if a verdict was not returned such party may move for judgment in accordance with his motion for a directed verdict within the aforesaid time after the jury have been discharged from consideration of the case. If a verdict was returned the court may allow the judgment to stand or may set the verdict aside and either order a new trial or direct the entry of judgment as if the requested verdict had been directed. If no verdict was returned the court may direct the entry of judgment as if the requested verdict had been directed or may order a new trial."

to accept the jury's verdict and should not have ordered a mistrial; and (2) the jury's answers to the interrogatories regarding the statute of limitations did not affect the validity of its verdict because (a) there was no basis for the court's conclusion that the jury was hopelessly confused, (b) those answers can be harmonized with the verdict, and (c) the three year statute of repose contained in § 52-584 is unconstitutional as applied to Robbins in this case. In response, the defendants argue that: (1) the trial court was not obligated to accept the verdict; (2) the trial court correctly determined that the jury's answers to the interrogatories were inconsistent with the verdict; and (3) § 52-584 is constitutional as applied to Robbins.

The hospital filed an appeal, Docket No. 14455, claiming that the trial court should have granted its motions for a directed verdict and for judgment notwithstanding the failure of the jury to reach a verdict because: (1) there was no evidence that Van Gilder had been the agent of the hospital; (2) the evidence clearly showed that Robbins' cause of action was barred by the statute of limitations and that there was no fraudulent concealment by the hospital; and (3) the court properly directed verdicts in favor of the hospital on counts two and three. Robbins responds that: (1) the trial court's denial of the hospital's motions for a directed verdict and for judgment notwithstanding the failure of the jury to reach a verdict are not reviewable for lack of a final judgment, under *Gold* v. *Newman,* supra; and (2) the issues related to counts two and three remain in the case, nevertheless, because the trial court's action in directing the verdicts was based upon its determination that the same factual and legal issues were contained in the first count and the defense thereto, and the defendants moved for the mistrial that the court ultimately ordered.

Having trekked this tortuous procedural path, we turn to the question of whether, at its end, there is a final judgment upon which our jurisdiction may rest. We conclude that there is not.

In *Gold* v. *Newman,* supra, 632, the trial court declared a mistrial after some of the jurors informed the court that they could not disregard certain depositions that had inadvertently and improperly been given to them during their deliberations. The defendants then moved for judgment in accordance with their previous motions for a directed verdict. The trial court denied these motions, and the defendants appealed. Id.

This court dismissed the appeal for lack of a final judgment. We held that the denial of a motion for judgment notwithstanding the failure of the jury to return a verdict is not a final judgment upon which an appeal may be based. Id. We stated that, in that case, the order denying the motion "[left] in effect the declaration of a mistrial, and a second trial in the normal course of events will follow. No rights of the parties have been yet determined." Id., 635; see *State* v. *Curcio,* 191 Conn. 27, 31, 463 A.2d 566 (1983); *Prevedini* v. *Mobil Oil Corporation,* 164 Conn. 287, 292, 320 A.2d 797 (1973).

In *Gold,* we also recognized that the granting by the trial court of a motion to set aside a verdict and to grant a new trial *is* an appealable order. That decision, however, is *not* appealable because such an order is a "final judgment" within the meaning of the principal appeal statute; General Statutes § 52-263;[14] but because that

---

[14] General Statutes § 52-263 provides: "APPEALS FROM SUPERIOR COURT. EXCEPTIONS. Upon the trial of all matters of fact in any cause or action in the superior court, whether to the court or jury, or before any judge thereof when the jurisdiction of any action or proceeding is vested in him, if either party is aggrieved by the decision of the court or judge upon any question or questions of law arising in the trial, including the denial of a motion to set aside a verdict, he may appeal to the court having jurisdic-

statute specifically provides for an appeal from such an order as an alternative to the "final judgment" basis of appeal. *Gold* v. *Newman,* supra, 637. We also recognized in *Gold* that "the granting of a motion for a new trial, which opens the judgment previously rendered, does not qualify as a final judgment from which an appeal may be taken." Id.

In *Gold,* moreover, the defendants argued that permitting an appeal at that procedural point might conserve judicial resources by avoiding the necessity of a second trial. Id., 638. We reasoned, however, that: (1) "[t]he legislature, by creating specific alternatives to a final judgment as a basis for appeal, has implicitly rejected other grounds for departing from the final judgment rule"; and (2) "[t]he fact that a second trial will ordinarily entail additional expense to the parties does not measure up to the circumstances we have heretofore regarded as having such a serious effect upon the rights of the parties that an appeal is warranted." Id.

Applying the reasoning of *Gold* to the facts of this case compels the conclusion that there is no basis for an appeal. As in *Gold,* the trial court's declaration of a mistrial will lead to a second trial. Thus, there is no final judgment under § 52-263 because "[n]o rights of the parties have been yet determined." Id., 635. As in *Gold,* the parties can offer no specific statutory basis, other than the final judgment rule embodied in § 52-263, for an appeal. As in *Gold,* the trial court's denial of the defendants' motions for a directed verdict and for judgment notwithstanding the failure of the jury to reach a verdict did not provide the basis for an appeal. Indeed, Robbins implicitly recognized the

tion from the final judgment of the court or of such judge, or from the decision of the court granting a motion to set aside a verdict, except in small claims cases, which shall not be appealable, and appeals as provided in sections 8-8 and 8-9."

applicability of *Gold* by arguing in his brief that the defendants' claims were not reviewable for lack of a final judgment. What Robbins failed to recognize, however, was that the same sauce he attempted to spread on the defendants' goose also necessarily graced his own gander.[15] Finally, as *Gold* recognized, these proceedings produced no more of a final judgment for purposes of an appeal than would have an order, opening a judgment previously rendered, entered upon a motion for a new trial.

Robbins suggests that *Gold* is distinguishable because, unlike *Gold,* in this case the jury returned a verdict. We think that this is a distinction without a difference.

Practice Book § 312[16] strongly suggests that ordinarily a general verdict and the answers to its accompanying interrogatories are inseparable. The purpose of the interrogatories is to explain or limit the verdict. Id. The interrogatories are to be "answered and delivered to the clerk as a part of the verdict." Id. Furthermore, "[t]he court will not accept a verdict until the interrogatories which are essential to the verdict have been answered." Id.

As the trial court recognized, the verdict and the answers irreconcilably conflicted with each other. Furthermore, the court made three efforts, by twice rein-

---

[15] "What's sauce for the goose is sauce for the gander" has been attributed to Marcus Varro. Translated from the Latin in John Ray's English Proverbs (1670). See *State* v. *Fernandez,* 5 Conn. App. 40, 52 n.4, 496 A.2d 533 (1985).

[16] Practice Book § 312 provides: "INTERROGATORIES

"The court may submit to the jury interrogatories for the purpose of explaining or limiting a general verdict, which shall be answered and delivered to the clerk as a part of the verdict. The clerk will take the verdict and then the answers to the several interrogatories, and thereafter he will take the court's acceptance of the verdict returned and the questions as answered, and proceed according to the usual practice. The court will not accept a verdict until the interrogatories which are essential to the verdict have been answered."

structing the jury and by rereading the statute of limitations to the jury, to dispel the jury's obvious confusion. These efforts, however, yielded only continuing confusion—described by the trial court as "hopeless"—as evidenced by the jury's questions and other communications. Although the trial court retained discretion to follow the procedure provided by § 52-223; see footnote 12; it was not required to do so. This hopeless confusion, rendering the jury unable to return a verdict and answers that were consistent with each other despite the court's repeated instructions, was functionally equivalent to the *Gold* jury's inability "to disregard certain depositions inadvertently given to the jury during their deliberations, despite the court's instructions to do so." *Gold* v. *Newman,* supra, 632. Under these circumstances, therefore, the trial court's conduct must be regarded as having vitiated this verdict, and the verdict must be regarded as a nullity. Consequently, this case was in the same posture as *Gold*: the denial of a motion for judgment notwithstanding the failure of the jury to return a verdict. Id., 635.[17]

Robbins also suggests that dismissing this appeal, in which the trial court declared a mistrial after a "verdict," albeit internally inconsistent, had been returned, will be unwise precedent. He argues that such a holding will permit some future, less conscientious trial judge to declare a mistrial after the jury has returned a perfectly valid verdict, simply because the trial judge may disagree with the verdict, without the ability of the parties to rectify such an injustice on appeal. We are not persuaded.

---

[17] The dissent suggests that the trial court should nonetheless have accepted the verdict and then set it aside so as to create a viable appeal. Thus, under this reasoning, the trial court would have been compelled to accept a verdict that it knew was inherently contradictory, that was legally flawed and that would have had to be reversed on appeal. We decline to limit the trial court's discretion to reject an irrational jury verdict for the purpose of expanding the proper limits of our appellate jurisdiction.

First, we are not prepared to indulge in the speculation that any Superior Court judge would engage in such an extreme departure from the basic norms of judicial conduct. We know of no case in which that has happened, we doubt that any judge would read this opinion as an invitation to do so, and we doubt that it ever will occur. We decline to carve out an exception to our ordinary rules of appellate jurisdiction solely upon the basis of such an unlikely risk.

Second, the fear implicit in that argument has no basis in the record of this case. Here, the trial court had, at the least, a plausible basis for its conclusion that the verdict was invalid and that the jury could not be relied upon to return a more intelligible verdict.

Third, even if that very unlikely event ever did occur, it would not necessarily go unremedied. If there were such a valid verdict returned that the trial court inexplicably ignored by declaring a mistrial, the party whom the verdict favored would be entitled to raise as a claim of error, on appeal from the second trial, the trial court's failure to render judgment on that verdict, "if the second trial should result in a judgment against [him]." *Gold* v. *Newman,* supra, 636.

The defendants argue that the directed verdicts on the second and third counts provide a jurisdictional basis for their appeals. We disagree.

It is clear from this record that the trial court directed those verdicts, not because it perceived there to be insufficient evidence on those counts, but because it believed that the same factual and legal issues were being litigated under the first count, the special defense of the statute of limitations and the reply of fraudulent concealment. Furthermore, the defendants repeatedly moved for a mistrial, which the trial court ultimately granted. A mistrial leads to a new trial, not to an appeal. Id., 637. They cannot now be heard to

complain about the new trial, without an intervening appeal, that they repeatedly sought by their motions. Finally, the first count of the complaint is directed against all the defendants. Even under the defendants' argument, that count remains to be retried. Thus, their rights have not yet been determined.

The appeals are dismissed.

In this opinion CALLAHAN, KATZ and F. X. HENNESSY, Js., concurred.

BERDON, J., dissenting. The issue raised by the majority on its own is quite simple. Does the Supreme Court have jurisdiction to hear an appeal from the trial court's declaration of a mistrial after the jury returned a verdict that the trial court refused to accept? I dissent, not because I would necessarily end up with a different bottom line on the merits, but because the issue of jurisdiction could be important in other cases in which the trial court refuses to accept a verdict and then declares a mistrial. I believe that we do have jurisdiction and should reach the merits of the case as briefed by the parties.[1]

In this medical malpractice case, the jury rendered a verdict in favor of the plaintiff, Arthur L. Robbins, against two defendants, John C. Van Gilder and the Yale University School of Medicine, in the amount of $1,550,000.[2] The verdict was acknowledged by the

[1] I agree with the majority that subject matter jurisdiction can be raised at any time, by the parties or the court. "The issue of subject matter jurisdiction can be raised at any time including on appeal. Once brought to the attention of the court, regardless of the form of the motion, it must be acted upon. *Cahill* v. *Board of Education,* 198 Conn. 229, 238, 502 A.2d 410 (1985). *Concerned Citizens of Sterling* v. *Sterling,* 204 Conn. 551, 556–57, 529 A.2d 666 (1987)." (Internal quotation marks omitted.) *Gagnon* v. *Planning Commission,* 222 Conn. 294, 297, 608 A.2d 1181 (1992).

[2] The jury found the issues in favor of the third defendant, Yale-New Haven Hospital.

jurors in open court. The trial court, over the objection of the plaintiff, refused to accept the verdict because it was of the opinion that the verdict conflicted with the jurors' answers to certain interrogatories. The jury was reinstructed, furnished with additional verdict and interrogatory forms, and directed to continue deliberations. After the jury requested further instructions on the statute of limitations and fraud, the trial court found that the jury was "hopelessly confused" and declared a mistrial, over the plaintiff's objections. The plaintiff's principal claim on appeal is that the trial court should have accepted the verdict and that the case should be remanded to the trial court with direction to accept the verdict.

This case differs substantially from *Gold* v. *Newman*, 211 Conn. 631, 560 A.2d 960 (1989), upon which the majority relies. In *Gold,* there was no jury verdict. The trial court merely declared a mistrial after it became aware of the jury's exposure to improper evidence. In the present case, the jury rendered a verdict. As a result, if this court concluded that the trial court should have accepted the verdict, it could reinstate the verdict and remand the case with instructions to accept and record the verdict. See *State* v. *Avcollie,* 178 Conn. 450, 471, 423 A.2d 118 (1979), cert. denied, 444 U.S. 1015, 100 S. Ct. 667, 62 L. Ed. 2d 645 (1980) (this court ordered that the jury verdict be reinstated and remanded the case to the trial court with direction to render judgment). In *Gold,* unlike the present case, a new trial would have been required because there was no verdict and therefore nothing to reinstate.

I concede that this case does not fall within the precise bounds of the exception to the final judgment rule set forth in *State* v. *Curcio,* 191 Conn. 27, 31, 463 A.2d 566 (1983) ("[a]n otherwise interlocutory order is appealable in two circumstances: (1) where the order or action terminates a separate and distinct proceed-

ing, or (2) where the order or action so concludes the rights of the parties that further proceedings cannot affect them"). I believe, however, that *Curcio* should be modified to allow an appeal in those situations in which there is a verdict upon which a judgment may be predicated.

Indeed, I discern no practical difference between our jurisdiction to hear an appeal when the court sets aside a verdict; General Statutes § 52-228b; e.g., *Fazio* v. *Brown,* 209 Conn. 450, 551 A.2d 1227 (1988); *Palomba* v. *Gray,* 208 Conn. 21, 543 A.2d 1331 (1988); and when a trial court refuses to accept a verdict rendered by a jury and declares a mistrial.[3] We should view our subject matter jurisdiction through the lens of the twenty-first century. To take such a narrow view of our subject matter jurisdiction, as the majority does, not only defies logic but burdens the parties with the enormous expense of relitigating an issue when relitigation may not be necessary.

Accordingly, I dissent.

---

[3] Footnote 17 of the majority opinion states that I suggest that the trial court should "have accepted the verdict and then set it aside so as to create a viable appeal." Apparently, the majority reads a different dissent because my dissent does not include such a statement nor does it suggest such a charade.