DANIEL J. GOLODNER ET AL. *v.* WOMEN'S CENTER OF SOUTHEASTERN CONNECTICUT, INC., ET AL.
(SC 17660)

Borden, Katz, Palmer, Vertefeuille and Zarella, Js.

---

Argued February 15—officially released April 3, 2007

*T. J. Morelli-Wolfe*, for the appellant (named plaintiff).

*Brett J. Boskiewicz*, with whom, on the brief, was *Frank F. Coulom, Jr.*, for the appellee (defendant Frauke Sawaha).

*Opinion*

KATZ, J. The sole issue in this appeal is whether the trial court properly dismissed the complaint of the named plaintiff, Daniel J. Golodner, alleging custodial interference by the nonresident defendant, Frauke Sawaha, for lack of personal jurisdiction on the ground that she was in Connecticut involuntarily and, thus, was immune from service of process.[1] We conclude that, because the defendant was in Connecticut pursuant to a court order and was defending against a separate

---

[1] In the present action for custodial interference, Alisha K. Golodner, through her father, Daniel J. Golodner, and Daniel Golodner, individually, brought suit against Sawaha and the Women's Center of Southeastern Connecticut, Inc. (Women's Center), the shelter for abused women where Sawaha and Alisha Golodner resided before leaving the country. Alisha Golodner's portion of the complaint was withdrawn before trial, and Daniel Golodner withdrew his claim against the Women's Center while this appeal was pending. We therefore refer to Daniel Golodner as the plaintiff and to Sawaha as the defendant.

child custody action when she was served, she was immune from process. Accordingly, we affirm the trial court's judgment of dismissal.

The following undisputed facts and procedural history are relevant to our disposition of the plaintiff's appeal. The plaintiff and the defendant, a German citizen, began a relationship in 2001 while the plaintiff was living in the United States and the defendant was living in Germany. The couple, who never were married, are the parents of a child, Alisha K. Golodner (Alisha), born in Germany on January 31, 2003. At various times in 2003 and 2004, the plaintiff and the defendant lived together at the plaintiff's residence in New London. In May, 2004, the defendant left the plaintiff's residence with Alisha and moved into a shelter operated by the named defendant, the Women's Center of Southeastern Connecticut, Inc., an organization that assists abused women.

Thereafter, the plaintiff commenced an action seeking custody of Alisha, which the defendant opposed. In connection with that action, on June 3, 2004, the plaintiff obtained an ex parte order of custody from the Superior Court in the judicial district of New London, prohibiting the defendant from returning to Germany with Alisha. On June 4, 2004, before the defendant had been served with that order, she and Alisha returned to Germany. On September 13, 2004, the plaintiff brought an action in Germany against the defendant seeking the return of Alisha pursuant to the Hague Convention on the Civil Law Aspects of International Child Abduction, October 25, 1980, T.I.A.S. No. 11,670, 1343 U.N.T.S. 89. On November 1, 2004, the plaintiff and the defendant entered into a stipulation, which was approved by the New London trial court, regarding the claims of both parties as to custody and providing, inter alia, that, "[p]ursuant to Connecticut law, there exists a rebuttable presumption that the parties, even though

unmarried, share joint legal custody of the minor child, with no designation as to primary residence."

On November 26, 2004, citing the stipulation, a German trial court ordered the repatriation of Alisha to the New London Superior Court. Specifically, the court ordered the defendant "to book only a direct flight from Hamburg or Frankfurt . . . [and] to immediately inform the police . . . and the border guard office . . . about the flight departure date, the departure airport and the flight number. . . . The travel documents— child [identification] . . . and passport for Alisha, passport of the defendant, escrowed at the police station . . . are to be handed out to the defendant . . . for the purpose of traveling to the [United States]." The defendant appealed from that order, but the German Appellate Court affirmed the order in February, 2005, thereby requiring the defendant to return Alisha to Connecticut.

The defendant then filed a motion to dismiss the plaintiff's custody action in the New London Superior Court.[2] In May, 2005, while the defendant was attending a court hearing in connection with that motion, a marshal served her with a summons and the complaint in the present action seeking, inter alia, money damages for the defendant's alleged custodial interference. The defendant thereafter moved to dismiss the present action for lack of personal jurisdiction on the ground that nonresidents are immune from service of process if they are in Connecticut involuntarily. According to the defendant, her presence was involuntary because she had been ordered by the German trial court to come to Connecticut to return Alisha and to defend against the plaintiff's custody action. The plaintiff objected to

[2] The trial court had dismissed the plaintiff's first custody action in February, 2005, but the plaintiff thereafter commenced another custody action in April, 2005, and it was this second action that the defendant was seeking to dismiss when she was served in the present case.

the motion, claiming that the defendant's presence was not involuntary because the German trial court had ordered only Alisha's return, not the defendant's return. Additionally, the plaintiff contended that the defendant was not immune from service both because she had sought affirmative relief from Connecticut courts as to custody and visitation of Alisha and in light of her egregious behavior in fleeing the jurisdiction. The trial court granted the defendant's motion to dismiss, stating in its order that "[a] nonresident, here to serve as a witness, is immune from legal process. *Chittenden* v. *Carter*, 82 Conn. 585, [589–90] 74 A. 884 (1909). Any exception is limited to part[y] plaintiff[s]." Thereafter, the plaintiff appealed from the judgment of dismissal to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 65-1 and General Statutes § 51-199 (c).

On appeal, the plaintiff renews the arguments that he had made to the trial court in opposition to the motion to dismiss. Although the plaintiff recognizes the legal doctrine that immunizes from process a nonresident who is involuntarily in Connecticut, he contends that, because the defendant was not here involuntarily, but rather chose to accompany Alisha on her flight to Connecticut, the trial court improperly dismissed the action for lack of personal jurisdiction. Additionally, according to the plaintiff, because the defendant sought affirmative relief from a Connecticut court in connection with the underlying custody action and engaged in egregious conduct in wrongfully abducting Alisha, the trial court should not have extended to the defendant the doctrine's protection.

The defendant maintains that she was here involuntarily because she had been ordered to return Alisha to Connecticut pursuant to the German trial court order. The defendant further maintains that, because she was in Connecticut defending against a separate custody

action, she was protected from process in this action, and adds that, to penalize her for protecting her legal rights against the plaintiff's claims, as he suggests, would in effect limit immunity to nonresident defendants who chose not to defend themselves and thereby eviscerate the reasons for granting immunity from process in the first instance. Finally, the defendant contends that the plaintiff's one-sided claims invoking equitable considerations do not inform the jurisdictional matter before the court. We agree with the defendant that she was here involuntarily and, accordingly, we affirm the judgment of the trial court.

We begin with a brief discussion of pertinent legal principles relating to the issue of personal jurisdiction. "Because a lack of personal jurisdiction may be waived by the defendant, the rules of practice require the defendant to challenge that jurisdiction by a motion to dismiss."[3] *Standard Tallow Corp.* v. *Jowdy*, 190 Conn. 48, 53, 459 A.2d 503 (1983). If a defendant challenges the court's personal jurisdiction, the plaintiff bears the burden of proving the court's jurisdiction. Id. This general rule is different, however, with respect to determining whether the court has jurisdiction over a defendant who is served personally or through abode service. In those circumstances, as opposed to situations wherein service is constructive, e.g., service on a foreign corporation or nonresident individual by mail, the defendant bears the burden of disproving personal jurisdiction.

[3] Generally speaking, when a defendant files a motion to dismiss challenging the court's jurisdiction, a two part inquiry is required. The trial court first must decide whether the applicable state statute authorizes the assertion of jurisdiction over the defendant. If the statutory requirement is met, the court's second obligation is to decide whether the exercise of jurisdiction over the defendant would violate constitutional principles of due process. *Knipple* v. *Viking Communications, Ltd.*, 236 Conn. 602, 606, 674 A.2d 426 (1996). The present case presents a common-law protection from jurisdiction that, as the vintage of the cases cited in this opinion demonstrates, rarely is invoked.

" 'The general rule putting the burden of proof on the defendant as to jurisdictional issues raised is based on the presumption of the truth of the matters stated in the officer's return. When jurisdiction is based on personal or abode service, the matters stated in the return, if true, confer jurisdiction. When jurisdiction is based on constructive service, jurisdiction cannot arise solely from the acts recited in the [officer's] return. . . .' [1 E. Stephenson, Connecticut Civil Procedure (2d Ed. 1970)] § 96, p. 390." *Standard Tallow Corp.* v. *Jowdy*, supra, 53.

Finally, a motion to dismiss admits all facts well pleaded and invokes any record that accompanies the motion, including supporting affidavits that contain undisputed facts. *Barde* v. *Board of Trustees*, 207 Conn. 59, 62, 539 A.2d 1000 (1988). If a resolution of a disputed fact is necessary to determine the existence of standing when raised by a motion to dismiss, a hearing may be held in which evidence is taken. *Weidenbacher* v. *Duclos*, 234 Conn. 51, 54 n.5, 661 A.2d 988 (1995). Because an evidentiary hearing was not held in the present case, we will accept, as did the trial court, all undisputed factual allegations for the purpose of determining whether the defendant has sustained her burden of proving that the court did not have personal jurisdiction over her.[4]

Following oral argument on the defendant's motion to dismiss, the trial court, in summary fashion, determined that the defendant was immune from legal process, citing only to *Chittenden* v. *Carter*, supra, 82 Conn. 585, for the proposition that "[a] nonresident, here to serve as a witness, is immune from legal process." The underlying facts are not in dispute, only their meaning as to

---

[4] In her motion to dismiss the present action, the defendant contended that the facts critical to her motion were undisputed, but sought an evidentiary hearing if the trial court concluded otherwise.

whether they establish a voluntary presence as reflected in *Chittenden*. Therefore, we turn to *Chittenden*, its genesis and its progeny, as they inform the question of when a nonresident served in Connecticut will be immune from process to determine whether the defendant's in state presence in this case was voluntary as that term has been defined.

*Chittenden*'s genesis can be traced to the case of *Bishop* v. *Vose*, 27 Conn. 1, 11–13 (1858), wherein this court held that a nonresident, while attending court in this state as a *plaintiff* in one action, was not protected from the service of civil process in a second action against him in this state. The defendant in *Bishop*, who claimed immunity from the service of process, had come into this state to attend the trial of a case pending here in which he was both a plaintiff and a witness. Id., 2. Although the *Bishop* court held that a nonresident plaintiff is not immune from civil process; id., 11; it did not decide expressly whether a nonresident *witness*, while attending court in this state to testify, is afforded immunity. Id., 12. Nonetheless, the court's rationale was based in part on the sound reasons to distinguish between the rights of a witness and of a plaintiff to such an exemption, and referred at length, without any expression of disapproval, to other authorities holding that nonresident witnesses should be so protected. Id., 13. Specifically, in addressing the claim that witnesses and parties from other states stand upon materially different grounds and that the witnesses ought not be sued while in attendance in our courts, the *Bishop* court remarked: "Perhaps this is so. We are not prepared to say that it is not, since a witness may be said not voluntarily to put himself under our jurisdiction like a party. Distinguished judges have thought there was a difference and a material difference in this respect, that foreign witnesses ought to be encouraged to come and testify in person, and therefore should be protected

from all jurisdictional process of a civil nature, while this is not necessary as to parties, who are not here except from pure choice . . . ."[5] Id. Unaware of any decisions that carried the exception of immunity to civil process beyond the case of a witness, nor of any principle of comity or public policy that should sustain the defendant's claim that he was so protected while here to testify in a case in which he was a plaintiff; id.; the court held that the defendant in *Bishop* was in this state because of his entirely voluntary presence in the pursuit of his rights as a plaintiff in another action and could be entitled to no greater rights or immunities than those enjoyed by our own citizens. Id., 11.

Subsequently, in *Chittenden* v. *Carter*, supra, 82 Conn. 589, this court expressly held that a nonresident witness present at the trial of a civil action, is exempt from service of civil process, citing reasons of public policy and the great weight of authority "giving to non-resident witnesses immunity from the service upon them of civil process . . . while going to, remaining at, and returning from courts before which they are to testify in another jurisdiction . . . ." The court expounded upon the principles on which the decisions from other jurisdictions regarding immunity of foreign witnesses had been based, explaining "that the due administration of justice requires that every reasonable method of ascertaining the whole truth in matters before them should be open to our courts; that a very important one of these methods is the personal pres-

[5] We note that there is language in *Bishop* v. *Vose*, supra, 27 Conn. 13, suggesting that all nonresident parties, both *defendants* and plaintiffs, should not be afforded the immunity from civil process that is afforded to foreign witnesses. As we note later in this opinion, however, an interpretive gloss subsequently was added by the United States Circuit Court for the District of Connecticut narrowing the court's holding in *Bishop* to limit the denial of civil immunity to plaintiffs only; see *Wilson Sewing Machine Co.* v. *Wilson*, 51 Conn. 595, 597–98 (1884); an interpretation thereafter cited favorably by the court in *Ryan* v. *Ebecke*, 102 Conn. 12, 19–20, 128 A. 14 (1925).

ence and oral testimony of witnesses having knowledge of the subject under investigation; that the personal attendance of foreign witnesses cannot be enforced by process, and must therefore necessarily be voluntary on their part; that liability to be sued in a foreign jurisdiction would naturally tend to deter such witnesses from attending court in such jurisdictions; and that as witnesses attending court are in a measure within the control of the court, during the trial of a cause, whatever interferes with such control and obstructs the trial affects the dignity and authority of the court itself." Id., 590.

Lastly, in *Ryan* v. *Ebecke*, 102 Conn. 12, 17, 128 A. 14 (1925), this court declined to afford immunity from suit to persons under bail who attend court to be tried on criminal charges, reasoning that the rule in civil actions is to encourage people, by immunity from process, to appear in court voluntarily, whereas defendants in criminal actions appear involuntarily and need not be encouraged. In the case of a criminal defendant, such person "aids the administration of justice in no way." Id. In rejecting the contention that it makes for the due administration of justice to have all obtainable parties present and that their presence should be encouraged, the court noted: "This is merely an extension of the reasons underlying the liberal rule in civil cases, and when applied to criminal cases, apparently for the sake of having a uniform and comprehensive reason, neglects certain obvious distinctions. . . . A glance at the factors concerned in a criminal arrest, would seem to leave little for support in the ideas of encouragement to attend . . . . A criminal is arrested to secure his custody and to keep him to respond to sentence if convicted, not to furnish an incentive for his appearance in court. Presumably the prosecuting authority has a case against him, although in law he is presumed innocent, and while an ill-advised accused

person may, and often does, render material assistance to the prosecution by his voluntary and permitted testimony, that item can hardly enter as a serious factor in estimating the value of his presence to the due administration of justice." (Citation omitted.) Id., 18.

Perhaps of greater significance to the present case is the *Ryan* court's discussion of *Wilson Sewing Machine Co.* v. *Wilson*, 51 Conn. 595 (1884), a case decided before *Chittenden*. In *Wilson*, the United States Circuit Court for the District of Connecticut had held that a nonresident attending the trial in this state of an action in which he was a defendant was not subject to service of civil process: "It is important to the administration of justice that each party to a suit should have a free and untrammeled opportunity to present his case, and that non-resident defendants should not be deterred, by the fear of being harassed or burdened with new suits in a foreign state, from presenting themselves in such state to testify in their own behalf or to defend their property." Id., 597. The court in *Ryan* expressly embraced this holding in *Wilson*, affording civil process immunity to a nonresident defendant, and its rationale that there may be "a reason why a plaintiff who has voluntarily sought the aid and protection of our courts, should not shrink from being subject to their control, which does not apply to a defendant, whose attendance is compulsory." (Internal quotation marks omitted.) *Ryan* v. *Ebecke*, supra, 102 Conn. 20, quoting *Wilson Sewing Machine Co.* v. *Wilson*, supra, 597–98.

In light of this legal landscape, we now turn to the facts in the present case. It is undisputed that the defendant was in Connecticut for several reasons, none of them voluntary as that term has been defined by our case law. The first was as a defendant in the custody action, a status that by itself entitled her to immunity from service of process. *Ryan* v. *Ebecke*, supra, 102

Conn. 20. Additionally, although the defendant had not yet been called as a witness in the custody action, it cannot reasonably be maintained that she was not present as a witness as well. As the court in *Wilson* recognized, defendants are important witnesses in their own cases and should not be deterred from presenting themselves in a foreign state to testify on their own behalf. *Wilson Sewing Machine Co.* v. *Wilson*, supra, 51 Conn. 597. The plaintiff's contention that the defendant should not be afforded immunity because she was in court in connection with her own motion to dismiss seeking to invoke her rights in connection with the custody proceeding would stand the immunity doctrine on its head. We agree with the defendant that to limit immunity to nonresident defendants who do not defend themselves would eviscerate the reasons for granting immunity from process in the first instance.

Finally, there is the issue of the German trial court order. The plaintiff contends that the defendant came voluntarily to Connecticut and submitted to the jurisdiction of the courts of this state as that term has been used in the aforementioned cases. Specifically, he asserts that the German court order did not *require* her to accompany Alisha back to Connecticut and that the order pertained only to the child. We disagree with the plaintiff's interpretation. Although the German court order did not state expressly that the defendant was ordered to return to Connecticut, she was the defendant in the German court, the orders regarding the flight arrangements were directed to her, the orders gave explicit instructions to the authorities to give the defendant her passport "at the departure airport for the purpose of traveling to the [United States]" and, because Alisha was two years old at the time, she could not be expected to travel without the defendant, the plaintiff's contention notwithstanding.[6] Therefore, the

---

[6] Indeed, we note that, in rejecting the defendant's claim that repatriation would pose a severe danger to Alisha by the plaintiff, the German Appellate

trial court properly concluded that the defendant was immune from service of process and properly dismissed the action for lack of personal jurisdiction over the defendant.

The judgment is affirmed.

In this opinion the other justices concurred.

Court remarked that, although the defendant, as the abductor, might refuse to return with Alisha, she could not use the danger that she herself would have created by allowing Alisha to travel without her abductor's chaperonage as an excuse to avoid repatriation.