## HELEN M. LESEBERG *v.* KEVIN O'GRADY
### (AC 29484)

Harper, Beach and West, Js.

Submitted on briefs March 19—officially released June 9, 2009

*Products, Inc.,* and *Dunnett,* to actions to recover damages for breach of a credit card agreement.

*Helen M. Leseberg*, pro se, the appellant, filed a brief (plaintiff).

*Richard Blumenthal*, attorney general, and *Susan Quinn Cobb* and *Philip Miller*, assistant attorneys general, filed a brief for the appellee (defendant).

*Opinion*

BEACH, J. Rather than appeal from the decrees of a court of probate, the plaintiff chose to pursue a cause of action against the Probate Court judge for civil damages. For more than 200 years, the doctrine of judicial immunity has required dismissal of such actions. This case is no exception. The plaintiff, Helen M. Leseberg, appeals from the judgment of the trial court rendered following the granting of the motion to dismiss filed by the defendant, Kevin O'Grady. On appeal, the plaintiff claims that the court, relying on the doctrines of judicial immunity and sovereign immunity, improperly dismissed her claims. We affirm the judgment of the trial court.

The following facts provide the necessary backdrop for the plaintiff's appeal. At all relevant times, the defendant was the judge of probate for the district of Westport. On July 15, 2004, the plaintiff's son, Steven Popovich, filed an ex parte application for temporary conservatorship of the plaintiff in the Probate Court. The defendant granted the application. On July 30, 2004,

the plaintiff's daughter, Diane Leseberg, filed an objection to Popovich's application. On August 10, 2004, the defendant, as judge of probate, denied Diane Leseberg's objection and also denied a motion to transfer filed by Diane Leseberg.[1]

Also on August 10, 2004, Popovich filed an application for the plaintiff's permanent conservatorship. On August 25, 2004, the defendant held a hearing on Popovich's application for permanent conservatorship. Present at the hearing were Popovich and his attorney, Diane Leseberg, the plaintiff's attorney and the property manager of the living facility where the plaintiff had resided since 2000. The plaintiff was not present at the hearing. Following the hearing, the defendant granted Popovich's application.

The plaintiff did not appeal from any of the decrees of the Probate Court. Instead, the plaintiff filed the present action against the defendant on August 10, 2007. The complaint alleged that the defendant violated the plaintiff's due process rights, intentionally inflicted emotional distress and committed negligence per se by improperly granting both the ex parte application and permanent application for conservatorship, and by denying Diane Leseberg's motion to transfer.[2] The defendant moved to dismiss the plaintiff's complaint on the ground that the plaintiff's claims were barred

---

[1] Diane Leseberg sought to have the matter transferred from the probate district of Westport to the district of Fairfield, the location of the plaintiff's living facility at that time.

[2] The plaintiff also filed an amended complaint on September 28, 2007, thirty-one days after the return day of the original complaint. General Statutes § 52-128 permits the filing of an amended complaint outside of the thirty days following the original return day at the discretion of the court, provided that the plaintiff pays costs. There is nothing in the record indicating that the plaintiff paid costs or that the court authorized the amendment. In its articulation of its decision regarding the defendant's motion to dismiss, the court referenced the original complaint. Therefore, the plaintiff's original complaint is the operative complaint in this matter.

by the doctrines of judicial immunity and sovereign immunity. The court granted the defendant's motion. This appeal followed.

The plaintiff argues that the court improperly granted the defendant's motion to dismiss and that it "erred/ abused its discretion" by "failing to find that the defendant's actions/omissions were in [excess]/outside of his statutory authority/jurisdiction . . . ." We disagree.

In reviewing the trial court's decision to grant a motion to dismiss, we "take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader." (Internal quotation marks omitted.) *DaimlerChrysler Corp.* v. *Law*, 284 Conn. 701, 711, 937 A.2d 675 (2007). "[A] motion to dismiss admits all facts well pleaded and invokes any record that accompanies the motion, including supporting affidavits that contain undisputed facts. . . . If a resolution of a disputed fact is necessary to determine the existence of standing when raised by a motion to dismiss, a hearing may be held in which evidence is taken." (Citation omitted.) *Golodner* v. *Women's Center of Southeastern Connecticut, Inc.*, 281 Conn. 819, 826, 917 A.2d 959 (2007).[3]

"It is a long-standing doctrine that a judge may not be civilly sued for judicial acts he undertakes in his capacity as a judge. The rationale is that a judge must be free to exercise his judicial duties without fear of reprisal, annoyance or incurring personal liability. . . . Absolute immunity, however, is strong medicine . . . . The presumption is that qualified rather than absolute

---

[3] Frequently, a motion to dismiss contests the jurisdiction of the court. See Practice Book § 10-30; *Filippi* v. *Sullivan*, 273 Conn., 1, 8, 866 A.2d 599 (2005). The issue of whether a motion to dismiss on the ground of judicial immunity is jurisdictional was raised but not decided in *Carrubba* v. *Moskowitz*, 274 Conn. 533, 877 A.2d 773 (2005). We similarly do not need to decide the issue in the context of this case.

immunity is sufficient to protect government officials in the exercise of their duties. . . .

"The officers to whom the absolute protection of judicial immunity extends is limited. This fact reflects an [awareness] of the salutary effects that the threat of liability can have . . . as well as the undeniable tension between official immunities and the ideal of the rule of law . . . . The protection extends only to those who are intimately involved in the judicial process, including *judges*, prosecutors and judges' law clerks. . . . Moreover, it is important to note that even judges do not enjoy absolute immunity for administrative as opposed to judicial actions. . . . The determination is made using a functional approach. . . . [I]mmunities are grounded in the nature of the function performed, not the identity of the actor who performed it." (Citations omitted; emphasis added; internal quotation marks omitted.) *Lombard* v. *Edward J. Peters, Jr., P.C.*, 252 Conn. 623, 630–32, 749 A.2d 630 (2000).

A judge is entitled to absolute judicial immunity unless "the judicial conduct is so far outside the normal scope of judicial functions that the judge was in effect not acting as a judge." *Shay* v. *Rossi*, 253 Conn. 134, 170, 749 A.2d 1147 (2000), overruled in part on other grounds by *Miller* v. *Egan*, 265 Conn. 301, 325, 828 A.2d 549 (2003), citing *Stump* v. *Sparkman*, 435 U.S. 349, 364, 98 S. Ct. 1099, 55 L. Ed. 2d 331 (1978). Judicial immunity "is overcome in only two sets of circumstances. First, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity. . . . Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Mireles* v. *Waco*, 502 U.S. 9, 11–12, 112 S. Ct. 286, 116 L. Ed. 2d 9 (1991).

In the present case, the defendant was acting in his judicial capacity when he ruled on the applications for

temporary conservatorship and permanent conservatorship and the motion to transfer. The general subject area is prescribed by statutes governing the Probate Court. See General Statutes § 45a-650 (appointment of conservator); General Statutes § 45a-654 (appointment of temporary conservator); General Statutes § 45a-661 (transfer of records upon relocation of person under representation); see also *Collins* v. *West Hartford Police Dept.*, 380 F. Sup. 2d 83, 90 (D. Conn. 2005) ("appointment of a conservator for [plaintiff's mother] properly viewed as a judicial act within the jurisdiction of the probate court").

The plaintiff argues, however, that the defendant lacked jurisdiction to act because his challenged rulings failed to comply fully with statutory procedures. In particular, the plaintiff alleged that the defendant granted the ex parte application even though it did not contain a physician's report as required by § 45a-654 (b). The plaintiff alleged that the defendant denied Diane Leseberg's motion to transfer even though the plaintiff was not a resident of Westport, the defendant's district, at the time the motion was filed, in violation of § 45a-661. The plaintiff also alleged that the defendant violated § 45a-650 when he granted the permanent application without the plaintiff's presence at the hearing.

These allegations, even if true, are not inconsistent with the defendant's general authority to act on such matters. A judge does not act in the complete absence of authority, even if she acts erroneously, unless "the judicial conduct is so far outside the normal scope of judicial functions that the judge was in effect not acting as a judge." (Internal quotation marks omitted.) *Miller* v. *Egan*, 265 Conn. 301, 326, 828 A.2d 549 (2003), quoting *Shay* v. *Rossi*, supra, 253 Conn. 170. There is no basis in the law on which to conclude that the defendant was acting outside the scope of his judicial functions when,

as here, he was ruling on applications for the appointment of a conservator and a motion to transfer. These actions are clearly within the scope of judicial functions of a judge of the Probate Court. See General Statutes §§ 45a-650, 45a-654 and 45a-661.

In *Phelps* v. *Sill*, 1 Day (Conn.) 315 (1804), the defendant, the Simsbury probate judge, was sued for damages because of his appointment of a guardian to oversee a $2000 estate of a nine year old boy. The guardian was reportedly "a man of no property, and a notorious bankrupt . . . ." Id. Although the nature of the guardian's character was "well known to the defendant, at the time of [the] appointment"; id.; the defendant "neglect[ed] and refus[ed] to take security from the guardian, as by law [was] required . . . ." Id., 328–29. Subsequently, the guardian, "soon after the receipt of the [plaintiff's] property, squandered and spent the whole amount thereof, and absconded . . . ." Id., 315.

The court found that the defendant was entitled to judicial immunity for his appointment of the guardian. Id., 329. It explained: "By these charges the defendant is [not] otherwise implicated, than for error of judgment, in doing an act . . . in the exercise of judicial power; and it is a settled principle, that for those a judge is not to be questioned in a civil suit. A regard to this maxim is essential to the administration of justice. If by any mistake in the exercise of his office, a judge should injure an individual, hard would be his condition, if he were to be responsible therefor in damages. The rules and principles, which govern in the exercise of judicial power, are not, in all cases, obvious; they are often complex, and appear under different aspects to different persons. No man would accept the office of judge, if his estate were to answer for every error in judgment, or if his time and property were to be wasted in litigations with every man, whom his

decisions might offend. It is, therefore, a settled principle, that however erroneous his judgment may be, either by positive acts, neglect, or refusal to do certain acts, or however injurious to a suitor, a judge is never liable, in any civil action, for damages arising from his mistake." Id. That principle remains intact.[4]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[4] In light of this disposition, we need not reach the issue of sovereign immunity.