GENE FENNELLY ET AL. *v.* EMMA NORTON
(AC 27132)

Schaller, McLachlan and Gruendel, Js.

Argued March 20—officially released August 7, 2007

*Jeffrey D. Ginzberg*, for the appellants (plaintiffs).

*Leslie I. Jennings-Lax*, with whom was *Andrew I. Schaffer*, for the appellee (defendant).

*Opinion*

GRUENDEL, J. In *Roth* v. *Weston*, 259 Conn. 202, 789 A.2d 431 (2002), our Supreme Court held that the fundamental right of a parent to make child rearing decisions mandates that when a nonparent seeks visitation, that party must allege and prove, by clear and convincing evidence, a relationship with the child that is similar in nature to a parent-child relationship, and that denial of the visitation would cause real and significant harm to the child. In this appeal, we consider that precedent within the procedural context of a motion to dismiss.

The plaintiffs, Gene Fennelly and Sharon Fennelly, are the paternal grandparents of the two minor children of the defendant, Emma Norton. They appeal from the judgment of the trial court granting the defendant's motion to dismiss for lack of subject matter jurisdiction. On appeal, the plaintiffs paradoxically claim that they satisfied the jurisdictional requirements enunciated in *Roth* and that Public Acts 2005, No. 05-258 (P.A. 05-258), "rendered . . . *Roth* . . . inapplicable" to their

application for visitation. We affirm the judgment of the trial court.

The relevant facts are not disputed. The defendant and the plaintiffs' son, Steven Fennelly (father), are the biological parents of the minor children.[1] Their first child, Ciara, was born on July 15, 1995. For a period of sixteen months beginning in April, 1997, the defendant, the father and Ciara lived with the father's sister, Kristin Ericsson, in Nashua, New Hampshire. In August, 1998, the defendant enrolled as a full-time college student in Connecticut and moved to Ansonia. At that time, the father and Ciara moved in with the plaintiffs, who also resided in Nashua. That arrangement continued for approximately five months. In January, 1999, the father and Ciara joined the defendant in Connecticut. A second child, Aiden, was born on August 22, 2000.

The defendant and the father separated in 2003, which was precipitated by the father's drug addiction, and the defendant commenced a custody action soon thereafter. In May, 2005, the court granted the defendant sole custody of the children. No visitation orders entered, as the father was incarcerated at that time.

The plaintiffs filed an application for visitation on August 16, 2005. It consisted solely of a standard custody-visitation application form on which they listed the name and date of birth of each minor child and checked four boxes.[2] The application contained no specific factual allegations. On September 26, 2005, the

---

[1] The defendant and the father never married.

[2] The four checked boxes provided: "Connecticut is the home state of the child(ren) at the time of the filing of this case. . . . The child(ren) has lived in Connecticut for the past six months, or from birth if the child is younger than six months old. . . . The child(ren) and at least one parent have a significant connection to Connecticut and there is substantial evidence in Connecticut concerning the child's present or future care, protection, training and personal relationships. . . . The applicant has/had a relationship with the child(ren) that is similar in nature to a parent-child relationship and denial of visitation would cause real and significant harm to the child(ren)."

defendant moved to dismiss the plaintiffs' application for lack of subject matter jurisdiction. Following a November 3, 2005 hearing on the matter at which the plaintiffs and Ericsson testified, the court concluded that the plaintiffs failed to prove, by clear and convincing evidence, that they had a relationship with the children similar in nature to a parent-child relationship and that denial of the visitation would cause real and significant harm to the children. As a result, the court granted the defendant's motion to dismiss and rendered judgment accordingly. From that judgment, the plaintiffs appeal. Additional facts will be set forth as necessary.

## I

## LEGAL BACKGROUND

Before considering the plaintiffs' specific claims, we briefly examine the precedent applicable to the present appeal. In *Troxel* v. *Granville*, 530 U.S. 57, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000), the United States Supreme Court addressed the constitutionality of a Washington statute governing nonparent visitation. In that case, "the plaintiffs, the paternal grandparents, sought visitation with their two granddaughters in excess of [the one short visit per month that] the defendant, the children's mother, had allowed. . . . The defendant and the plaintiffs' son, the father of the children, had never married. . . . After the plaintiffs' son and the defendant ended their relationship, the plaintiffs' son committed suicide. . . . The defendant married another man, who formally adopted the children. . . . In *Troxel*, the Washington Superior Court ordered that the grandparents be permitted visitation with their granddaughters for one weekend per month, one week during the summer, and four hours on both of the petitioning grandparents' birthdays. . . . On appeal, the Washington Appellate Court reversed the trial court's visitation order and

dismissed the grandparents' petition for visitation. . . . The Washington Supreme Court affirmed the Appellate Court's judgment that the grandparents could not obtain visitation of their grandchildren pursuant to a statute that allowed any person to petition for visitation rights at any time and authorized the Washington state Superior Courts to grant such rights whenever visitation may serve in the child's best interests. . . .

"The United States Supreme Court affirmed the judgment of the Washington Supreme Court, holding that the statute, as applied in that case, violated the due process clause of the fourteenth amendment to the United States constitution, because it was an infringement on [the defendant's] fundamental right to make decisions concerning the care, custody, and control of her two daughters. . . . In support of this determination, the court reasoned that Washington's breathtakingly broad statute permitted a decision concerning visitation made by a fit custodial parent to be overruled on the basis of a Superior Court judge's determination that visitation with a third party would be in the child's best interests." (Citations omitted; internal quotation marks omitted.) *In re Jeisean M.*, 270 Conn. 382, 393–94, 852 A.2d 643 (2004).

Our Supreme Court subsequently considered the constitutionality of General Statutes § 46b-59,[3] Connecticut's nonparent visitation statute. In *Roth* v. *Weston*,

[3] General Statutes § 46b-59, entitled "Court may grant right of visitation to any person," provides: "The Superior Court may grant the right of visitation with respect to any minor child or children to any person, upon an application of such person. Such order shall be according to the court's best judgment upon the facts of the case and subject to such conditions and limitations as it deems equitable, provided the grant of such visitation rights shall not be contingent upon any order of financial support by the court. In making, modifying or terminating such an order, the court shall be guided by the best interest of the child, giving consideration to the wishes of such child if he is of sufficient age and capable of forming an intelligent opinion. Visitation rights granted in accordance with this section shall not be deemed to have created parental rights in the person or persons to whom such visitation rights are granted. The grant of such visitation rights shall

supra, 259 Conn. 209, the court framed the issue before it as "whether, in light of the United States Supreme Court decision in *Troxel*, § 46b-59, as interpreted by this court in *Castagno* v. *Wholean*, 239 Conn. 336, 339–52, 684 A.2d 1181 (1996), is unconstitutional, either facially or as applied in this case." In *Castagno*, the court "incorporated a threshold jurisdictional requirement into § 46b-59 that would permit the trial court to entertain a petition for visitation only when the family life of the minor child had been disrupted either by state intervention analogous to the situations included within [General Statutes] §§ 46b-56 and 46b-57 or 'in a manner similar to that addressed by §§ 46b-56 and 46b-57, but in which the courts have not yet become involved.' " *Roth* v. *Weston*, supra, 215–16, quoting *Castagno* v. *Wholean*, supra, 350.

In *Roth*, our Supreme Court overruled *Castagno*, concluding that "the threshold requirement articulated in *Castagno* fails to protect adequately the fundamental right to rear one's child and the right to family privacy." *Roth* v. *Weston*, supra, 259 Conn. 217. The court stated: "[I]t is now apparent that [*Castagno's* interpretation of § 46b-59] does not adequately acknowledge the status of parents' interest in the care, custody and control of their children, as 'perhaps the oldest of the fundamental liberty interests recognized by [the Supreme] Court.' *Troxel* v. *Granville*, supra, 530 U.S. 65. Building on a long line of cases acknowledging the fundamental right of parents to raise their children as they see fit, *Troxel* teaches that courts must presume that 'fit parents act in the best interests of their children,' and that 'so long as a parent adequately cares for his or her children (i.e., is fit), there will normally be no reason for the State

---

not prevent any court of competent jurisdiction from thereafter acting upon the custody of such child, the parental rights with respect to such child or the adoption of such child and any such court may include in its decree an order terminating such visitation rights."

to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children.' Id., 68–69. Moreover, *Troxel* confirms that among those interests lying at the core of a parent's right to care for his or her own children is the right to control their associations. Id. The essence of parenthood is the companionship of the child and the right to make decisions regarding his or her care, control, education, health, religion and association. *Pierce* v. *Society of Sisters*, 268 U.S. 510, 534–35, 45 S. Ct. 571, 69 L. Ed. 1070 (1925); *Meyer* v. *Nebraska*, 262 U.S. 390, 399, 43 S. Ct. 625, 67 L. Ed. 1042 (1923) (noting that liberty interest includes rights of parents to establish home, bring up children and control education). Furthermore, *Troxel* confirms that the family integrity is the core element upon which modern civilization is founded and that the safeguarding of familial bonds is an innate concomitant of the protective status accorded the family as a societal institution." *Roth* v. *Weston*, supra, 216–17.

The *Roth* court held that the standard of review applicable to the "legislative intrusion" into a parent's fundamental right to rear one's child embodied in § 46b-59 is the strict scrutiny test. Id., 217–18. It noted that "[t]he constitutionally protected interest of parents to raise their children without interference undeniably warrants deference and, absent a powerful countervailing interest, protection of the greatest possible magnitude." Id., 228. The court then reformulated the threshold requirement for nonparent visitation applications: "[W]e conclude that there are two requirements that must be satisfied in order for a court: (1) to have jurisdiction over a petition for visitation contrary to the wishes of a fit parent; and (2) to grant such a petition. First, the petition must contain *specific, good faith allegations* that the petitioner has a relationship with the child that

is similar in nature to a parent-child relationship. The petition must also contain *specific, good faith allegations* that denial of the visitation will cause real and significant harm to the child." (Emphasis added.) Id., 234–35. The court continued: "The degree of specificity of the allegations must be sufficient to justify requiring the fit parent to subject his or her parental judgment to unwanted litigation. Only if these specific, good faith allegations are made will a court have jurisdiction over the petition." Id., 235. Accordingly, if an application for visitation lacks such specific, good faith allegations, the court cannot proceed to a consideration of whether those allegations are proven in a given instance.[4] As the *Roth* court stated: "[O]nce these high jurisdictional hurdles have been overcome, the petitioner must prove these allegations by clear and convincing evidence. Only if that enhanced burden of persuasion has been met may the court enter an order of visitation." Id. Thus, the *Roth* test is one of strict application.

In articulating those requirements, the *Roth* court sought to minimize the intrusion on parental prerogative. It observed that "[u]nlike with a petition by the department of children and families alleging abuse or neglect; General Statutes § 46b-129; there is no real barrier to prevent a [party], who has more time and money than the child's parents, from petitioning the court for visitation rights. A parent who does not have the up-front out-of-pocket expense to defend against the . . . petition may have to bow under the pressure even if the parent honestly believes it is not in the best interest of the child. . . . The prospect of competent

[4] In the companion case of *Crockett* v. *Pastore*, 259 Conn. 240, 789 A.2d 453 (2002), released the same day as *Roth*, our Supreme Court reiterated that "a trial court is without jurisdiction to consider a petition for visitation pursuant to [General Statutes § 46b-59] in the absence of specific, good faith allegations that: (1) the petitioner was someone with whom the child had a parent-like relationship; and (2) the child would suffer real and significant harm if deprived of the visitation." *Crockett* v. *Pastore*, supra, 247.

parents potentially getting caught up in the crossfire of lawsuits by relatives and other interested parties demanding visitation is too real a threat to be tolerated in the absence of protection afforded through a stricter burden of proof." (Citation omitted; internal quotation marks omitted.) *Roth* v. *Weston*, supra, 259 Conn. 232. For that reason, when a nonparent petitioning for visitation pursuant to § 46b-59 has implicated the court's jurisdiction by making specific, good faith allegations of a relationship with the child that is similar in nature to a parent-child relationship and allegations that denial of the visitation would cause real and significant harm to the child, the court may grant the application only when the nonparent proves the requisite relationship and harm by clear and convincing evidence.[5] Id. With that precedent in mind, we turn to the plaintiffs' claims.

## II

## MOTION TO DISMISS

The plaintiffs claim that the court improperly granted the defendant's motion to dismiss. We do not agree.

"As in civil matters, the scope of the motion to dismiss in family matters is carefully circumscribed. It may be used to assert only '(1) lack of jurisdiction over the subject matter, (2) lack of jurisdiction over the person, (3) improper venue, (4) insufficiency of process and (5) insufficiency of service of process.' Practice Book § 25-13." *Simms* v. *Simms*, 89 Conn. App. 158, 163, 872 A.2d 920 (2005). "The standard of review of a motion to dismiss is . . . well established. In ruling upon

[5] In their appellate brief, the plaintiffs suggest that *Roth* imposes an insurmountable hurdle, contending that "not one lower court has granted a grandparent visitation application since 2002." Although we have no way of knowing whether that statement is accurate, as an intermediate body bound by the decisions of our Supreme Court, we are not the proper audience for such argument. See *State* v. *Smith*, 100 Conn. App. 313, 325, 917 A.2d 1017, cert. denied, 282 Conn. 920, 925 A.2d 1102 (2007).

whether a complaint survives a motion to dismiss, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader. . . . A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . Because a challenge to the jurisdiction of the court presents a question of law, our review of the court's legal conclusion is plenary." (Citations omitted; internal quotation marks omitted.) *Weihing* v. *Dodsworth*, 100 Conn. App. 29, 32, 917 A.2d 53 (2007). "Moreover, [i]t is a fundamental rule that a court may raise and review the issue of subject matter jurisdiction at any time. . . . Subject matter jurisdiction involves the authority of the court to adjudicate the type of controversy presented by the action before it. . . . [A] court lacks discretion to consider the merits of a case over which it is without jurisdiction . . . ." (Internal quotation marks omitted.) *Peters* v. *Dept. of Social Services*, 273 Conn. 434, 441, 870 A.2d 448 (2005).

Mindful of that precept, the particular procedural history of this case warrants additional attention. On September 26, 2005, the defendant timely moved to dismiss the plaintiffs' application for lack of subject matter jurisdiction. In her accompanying memorandum of law filed pursuant to Practice Book § 25-13,[6] the defendant stated: "The court lacks subject matter jurisdiction over the plaintiffs' complaint signed August 15, 2005, because it fails, in all respects, to specifically allege the necessary facts. In particular, the complaint contains no specific instances to support a parent-like relationship with the children. It also does not contain any specific instances to support the claim that the lack of visitation will cause the children to suffer real and

---

[6] Practice Book § 25-13 (a) requires in relevant part that a motion to dismiss "shall always be filed with a supporting memorandum of law . . . ."

substantial emotional harm. Finally, there is no allegation that the [defendant], who has sole custody, is unfit." The memorandum concluded that the plaintiffs' failure to make such specific factual allegations as required by *Roth* "is fatal to this court's jurisdiction." Notably, the defendant's motion contained no factual allegations; rather, it simply referred to the dearth of specific, good faith allegations in the plaintiffs' application.

The defendant's motion to dismiss and accompanying memorandum of law placed the plaintiffs on notice that their application allegedly failed to satisfy the *Roth* criteria, thereby depriving the court of subject matter jurisdiction over their action. Practice Book § 25-13 (b) mandates that "[i]f an adverse party objects to [the motion to dismiss] he or she *shall*, at least five days before the motion is to be considered on the short calendar, file and serve . . . a memorandum of law and, where appropriate, supporting affidavits as to facts not apparent on the record." (Emphasis added.) The plaintiffs filed neither an opposition to the motion to dismiss nor a related memorandum of law, in contravention of Practice Book § 25-13 (b).

Furthermore, General Statutes § 52-128 permitted the plaintiffs, as of right, to "amend any defect, mistake or informality in the writ, complaint or petition and insert new counts in the complaint, which might have been originally inserted therein, without costs, during the first thirty days after the return day. . . ."[7] See also Practice Book § 10-59. The return day in the present case was September 13, 2005. Accordingly, when the defendant filed her motion to dismiss and accompanying memorandum of law on September 26, 2005, the plaintiffs were apprised of the alleged deficiency in their pleading and, at that time, had approximately two

[7] Pursuant to Practice Book § 25-8 (b), Practice Book §§ 10-59, 10-60 and 10-61 "shall apply to family matters . . . ."

and one-half weeks in which to amend their application for visitation. The plaintiffs chose not to avail themselves of that statutory right.

In this appeal, the defendant argues, as she did both in her motion to dismiss and at the outset of the November 3, 2005 hearing, that the court lacked jurisdiction under *Roth. Roth* plainly distinguishes the issue of whether a court has jurisdiction over an application for visitation contrary to the wishes of a fit parent from the issue of whether a court may grant such an application. *Roth* v. *Weston*, supra, 259 Conn. 234. The transcript of the November 3, 2005 proceeding indicates that the court improperly merged those issues.

At the outset of the proceeding, counsel for the plaintiffs indicated that the plaintiffs were prepared to testify. Counsel for the defendant immediately objected, indicating that her motion to dismiss was pending before the court and reasserting that the plaintiffs had not satisfied the threshold requirements of *Roth.* Rather than passing on the question of whether the plaintiffs' application met the jurisdictional requirements of *Roth,* however, the court accepted the invitation of the plaintiffs' counsel to hear testimony from the plaintiffs to "establish the facts." At that moment, the court departed from well established law.

" 'It is axiomatic that once the issue of subject matter jurisdiction is raised, it must be *immediately* acted upon by the court.' *Gurliacci* v. *Mayer,* 218 Conn. 531, 545, 590 A.2d 914 (1991); *Statewide Grievance Committee* v. *Rozbicki,* 211 Conn. 232, 245, 558 A.2d 986 (1989); *Cahill* v. *Board of Education,* 198 Conn. 229, 238, 502 A.2d 410 (1985)." (Emphasis added.) *Federal Deposit Ins. Corp.* v. *Peabody, N.E., Inc.,* 239 Conn. 93, 99, 680 A.2d 1321 (1996). Our Supreme Court has explained that "once raised, either by a party or by the court itself, the question [of subject matter jurisdiction] must be

answered *before* the court may decide the case." (Emphasis added; internal quotation marks omitted.) *Rayhall* v. *Akim Co.*, 263 Conn. 328, 337, 819 A.2d 803 (2003); see also *Baldwin Piano & Organ Co.* v. *Blake*, 186 Conn. 295, 297–98, 441 A.2d 183 (1982); W. Horton & K. Knox, 1 Connecticut Practice Series: Practice Book Annotated (4th Ed. 1998) § 10-30, authors' comments, p. 355 ("[e]verything else screeches to a halt whenever a non-frivolous jurisdictional claim is asserted"). *Roth* likewise instructs that it is only after "these high jurisdictional hurdles [requiring specific, good faith allegations in the application] have been overcome [that] the petitioner must prove these allegations by clear and convincing evidence." *Roth* v. *Weston*, supra, 259 Conn. 235.

In *Federal Deposit Ins. Corp.* v. *Peabody, N.E., Inc.*, supra, 239 Conn. 93, our Supreme Court addressed a related question. In that case, the third party plaintiffs (Peabody) filed a third party complaint, to which the third party defendant responded by filing a motion to dismiss for lack of subject matter jurisdiction. Id., 96–97. Thereafter, Peabody filed a motion to amend its complaint, which the court granted.[8] Id., 97. On appeal, the Supreme Court ruled that it was "inappropriate for the trial court to consider Peabody's amended third party complaint, rather than its initial complaint, when acting on the [third party defendant's] motion to dismiss for lack of subject matter jurisdiction." Id., 99. The court indicated that once the motion to dismiss for lack of subject matter jurisdiction was filed, the trial court was "obligated" to scrutinize Peabody's initial complaint and determine whether subject matter jurisdiction was

---

[8] Peabody sought to amend its complaint by order of judicial authority, which is permitted under Practice Book § 10-60. By contrast, the plaintiffs in the present case were free to amend their application as of right, under General Statutes § 52-128 and Practice Book § 10-59, following the filing of the defendant's motion to dismiss and related memorandum of law. They elected not to do so.

lacking *before* considering Peabody's motion to amend. Id. The Supreme Court reached the same result in *Gurliacci* v. *Mayer*, supra, 218 Conn. 531. It stated: "In this case, the trial court allowed the plaintiff to amend her complaint prior to ruling on the motion to dismiss. By considering the motion to amend prior to ruling on the challenge to the court's subject matter jurisdiction, the court acted inconsistently with the rule that, as soon as the jurisdiction of the court to decide an issue is called into question, all other action in the case must come to a halt until such a determination is made." Id., 545.

Despite repeated overtures by the defendant calling the jurisdiction of the court into question, all other action in the case did not come to a halt. Rather, the court accepted the plaintiffs' invitation to conduct an evidentiary hearing, by which the plaintiffs concededly attempted to establish the threshold requirements of *Roth*.[9] Put another way, they sought to augment the allegations of their application.

The sole issue raised in the defendant's motion to dismiss was the plaintiffs' failure to comply with the *Roth* requirements in their application for visitation. *Roth* instructs that when faced with such a jurisdictional challenge, the court should simply "examine the allegations of the petition and compare them to the jurisdictional requirements set forth [in *Roth*]."[10] *Roth* v. *Weston*, supra, 259 Conn. 235. That mandate is consistent with the rule that in deciding a motion to dismiss,

[9] Referencing that evidentiary hearing at oral argument before this court, counsel for the plaintiffs stated that "we were given a gift and we ran with it." He further described his clients' testimony as an attempt to "supplement the pleading."

[10] It bears repeating that in enunciating its jurisdictional requirements, *Roth* held that "*the petition* must contain specific, good faith allegations" in order for a court to have jurisdiction over a petition for visitation. (Emphasis added.) *Roth* v. *Weston*, supra, 259 Conn. 234.

our courts must evaluate the facts alleged in the complaint. See, e.g., *Golodner* v. *Women's Center of Southeastern Connecticut, Inc.*, 281 Conn. 819, 826, 917 A.2d 959 (2007) ("a motion to dismiss admits all facts well pleaded and invokes any record that accompanies the motion, including supporting affidavits that contain undisputed facts"); *Cox* v. *Aiken*, 278 Conn. 204, 211, 897 A.2d 71 (2006) ("[w]hen a . . . court decides a jurisdictional question raised by a pretrial motion to dismiss, it must consider the allegations of the complaint" [internal quotation marks omitted]); *Mahoney* v. *Lensink*, 213 Conn. 548, 567, 569 A.2d 518 (1990) (when reviewing motion to dismiss, court "limited to the facts alleged in the plaintiff[s'] complaint" [internal quotation marks omitted]); *Barde* v. *Board of Trustees*, 207 Conn. 59, 62, 539 A.2d 1000 (1988) ("motion to dismiss . . . admits all facts which are well pleaded, invokes the existing record and must be decided upon that alone" [internal quotation marks omitted]). Because the defendant's motion to dismiss for lack of jurisdiction was predicated on the insufficiency of the application for visitation, it was inappropriate for the court to look beyond that pleading and permit the plaintiffs to augment the application with additional allegations at the evidentiary hearing.[11]

---

[11] Although a hearing may be held when resolution of a disputed fact is necessary to determine the jurisdiction of the court; see, e.g., *Golodner* v. *Women's Center of Southeastern Connecticut, Inc.*, supra, 281 Conn. 826; *Manifold* v. *Ragaglia*, 94 Conn. App. 103, 117 n.7, 891 A.2d 106 (2006); "in the absence of any disputed issues of fact pertaining to jurisdiction," a hearing is unnecessary. *Amore* v. *Frankel*, 228 Conn. 358, 369, 636 A.2d 786 (1994). In the present case, the motion to dismiss did not dispute any of the allegations contained in the plaintiffs' application. Rather, it simply alleged that as a matter of law, those allegations failed to comply with the jurisdictional requirements of *Roth*. Furthermore, in articulating the "constitutionally mandated" requirements concerning an application for visitation by a third party, the *Roth* court made no mention of evidentiary hearings.

That is not to say that an evidentiary hearing never is warranted, such as in instances in which a motion to dismiss is accompanied by documentation, such as an affidavit, that raises a disputed issue of fact. See, e.g.,

In addition, the court never resolved the threshold question of subject matter jurisdiction. Ruling orally, the court stated: "I have reviewed [the defendant's] memorandum of law [in support of the motion to dismiss]. I'm familiar enough with *Roth* and the facts as presented to determine this at this time. . . . [T]here must be clear and convincing evidence that the relationship with the child is similar to a parent-child relationship, and it might have been some years ago, but clearly is not at this date. And there also has to be clear and convincing evidence that denial of visitation will cause real and significant harm to the children. That's a difficult burden as well. . . . I don't think that I have heard enough evidence here . . . which I believe rose to any kind of proof that would be required in a court of this state . . . . So, with that, the motion to dismiss is granted."

We conclude that the court's determination was improper. *Roth* could not be more clear in its requirement that a nonparent must allege in the application for visitation "specific, good faith allegations" that the nonparent has a relationship with the child that is similar in nature to a parent-child relationship and that denial of the visitation will cause real and significant harm to the child. *Roth* v. *Weston*, supra, 259 Conn. 234–35. The plaintiffs' application for visitation contained not a single specific allegation of either the requisite relationship or harm. The mere act of checking a box on the application for visitation form that provides that "[t]he applicant has/had a relationship with the child(ren) that is similar in nature to a parent-child

*Hersey* v. *Lonrho, Inc.*, 73 Conn. App. 78, 80, 807 A.2d 1009 (2002). In the absence of any disputed issues of fact pertaining to jurisdiction, however, we think the "admittedly high" requirements of *Roth*, the strict application thereof and the policy considerations discussed therein require a court, when confronted with a motion to dismiss for lack of subject matter jurisdiction predicated solely on the application's failure to comply with *Roth*, to decide that motion on the application itself.

relationship and denial of visitation would cause real and significant harm to the child(ren)" does not suffice for the specific, good faith allegations required by *Roth*.[12] The plaintiffs did not attach an affidavit to their application for visitation; see, e.g., *Harrington* v. *Bernardi*, Superior Court, judicial district of New Haven, Docket No. FA-02-0471893-S (March 28, 2003); nor did they file an amended complaint containing specific factual allegations. See *Bennett* v. *Nixon*, Superior Court, judicial district of New Haven, Docket No. FA-03-0484745-S (February 27, 2004). Furthermore, the plaintiffs were bound by Practice Book § 25-4, which requires in relevant part that "[e]very application in an action for visitation of a minor child . . . shall state . . . the facts necessary to give the court jurisdiction. . . ." It therefore was incumbent on the plaintiffs to state, in their application for visitation, the facts that supported the conclusion that they possessed a relationship with the children that is similar in nature to a parent-child relationship and that denial of the visitation would cause real and significant harm to the children. Without such factual specificity, subjecting a fit parent to unwanted litigation is unwarranted. *Roth* v. *Weston*, supra, 235. Because the plaintiffs' application contained no such factual allegations, the court lacked jurisdiction and could not, consistent with the mandates of *Roth*, proceed to a consideration of whether clear and convincing evidence existed in support of the application.

"The constitutionally protected interest of parents to raise their children without interference undeniably

[12] Although we acknowledge that the visitation form completed by the plaintiffs was prepared by the office of the chief court administrator, it does not negate the obligation of a party to comply with the jurisdictional hurdles set forth in *Roth*. The plaintiffs were represented in this matter by an experienced attorney and a family law trial advocate certified by the National Board of Trial Advocacy, who completed the application on their behalf. More importantly, the plaintiffs in this appeal have not raised any issue concerning the visitation form.

warrants deference and, absent a powerful countervailing interest, protection of the greatest possible magnitude." Id., 228. In fashioning what it termed "admittedly high" and "constitutionally mandated" hurdles; id., 229, 235; *Roth* sought to safeguard against unwarranted intrusions into a parent's authority. Id., 235. Accordingly, when faced with a motion to dismiss an application for visitation, the trial court is required under *Roth* to scrutinize the application and to determine whether it contains specific, good faith allegations of both relationship and harm.[13] See id. ("in determining whether the trial court had jurisdiction over a petition for visitation, we simply . . . examine the allegations of the petition and compare them to the jurisdictional requirements set forth herein"); accord *Ruffino* v. *Bottass*, Superior Court, judicial district of Hartford, Docket No. FA-05-4019188-S (February 10, 2006) (40 Conn. L. Rptr. 740) (although complaint set forth recital that *Roth* requirements existed, "Connecticut is a fact-pleading jurisdiction . . . and *Roth* requires that the claims be supported by specific factual allegations" [citation omitted]); *Malave* v. *Ortiz*, Superior Court, judicial district of Hartford, Docket No. FA-03-0732314-S (January 28, 2003) (granting motion to dismiss under *Roth* because application for visitation "unaccompanied by any supporting documentation or factual allegations of any kind"). If the application does not contain such allegations, the court lacks subject matter jurisdiction and the application must be dismissed.

"[An appellate court] can sustain a right decision although it may have been placed on a wrong ground."

---

[13] Although in *Roth* v. *Weston*, supra, 259 Conn. 202, *Crockett* v. *Pastore*, 259 Conn. 240, 789 A.2d 453 (2002), and *Clements* v. *Jones*, 71 Conn. App. 688, 803 A.2d 378 (2002), the courts examined both the complaint and the proof in the record, we decline to do so. Those opinions expressly indicate that the courts looked beyond the allegations contained in the complaint only because the *Roth* requirements were newly announced. See *Crockett* v. *Pastore*, supra, 248; *Roth* v. *Weston*, supra, 235; *Clements* v. *Jones*, supra, 694.

(Internal quotation marks omitted.) *LaBow* v. *LaBow*, 69 Conn. App. 760, 761 n.2, 796 A.2d 592, cert. denied, 261 Conn. 903, 802 A.2d 853 (2002). Exercising our plenary review of this question of subject matter jurisdiction, we conclude that because the application contained no specific, good faith allegations, the defendant's motion to dismiss properly was granted.

III

P.A. 05-258

The plaintiffs also claim, in the event that we are not persuaded by their contention that they satisfied the *Roth* criteria, that P.A. 05-258 "rendered . . . *Roth* . . . inapplicable" to their application for visitation. That claim merits little attention. Public Act 05-258 did not amend § 46b-59. Contrary to the contention of the plaintiffs, it does not provide "an alternative basis for grandparents to seek visitation rights." Section three of that act, on which the plaintiffs rely, amended § 46b-56. By its plain language, that statute, as amended by P.A. 05-258, § 3 (a), pertains solely to "any controversy before the Superior Court as to the custody or care of minor children . . . ." It is silent as to actions for visitation.

As this court recently noted in *Fish* v. *Fish*, 90 Conn. App. 744, 881 A.2d 342, cert. granted, 275 Conn. 924, 883 A.2d 1243 (2005), the petition for child custody and the application for child visitation are two different animals. Whereas the paramount concern of the court in *Roth* was the right of a fit parent to raise a child free of interference by the state and nonparents, the paramount concern in awarding custody is the best interest of the child. Id., 756–57. The plaintiffs posit that by amending § 46b-56 to require the court to consider the best interest of the child in making or modifying any order as to the custody or care of a child, the legislature effectively overruled *Roth*'s statement that

in reviewing an application for visitation, "the best interests of the child are secondary to the parents' rights." *Roth* v. *Weston*, supra, 259 Conn. 223. Nothing in either the plain language of P.A. 05-258 or its legislative history supports that assertion. As such, the plaintiffs' claim fails.

The judgment is affirmed.

In this opinion McLACHLAN, J., concurred.

SCHALLER, J., concurring. Although I agree with the result, I respectfully disagree with the analysis set forth in the majority opinion with respect to the motion to dismiss filed by the defendant, Emma Norton. In view of the events that occurred during the proceedings in the trial court, I believe that the plaintiffs, Gene Fennelly and Sharon Fennelly, appropriately were given an evidentiary hearing in order to supplement their pleading in their effort to satisfy the jurisdictional requirements established by our Supreme Court in *Roth* v. *Weston*, 259 Conn. 202, 789 A.2d 431 (2002). I do agree with my colleagues that the trial court improperly considered the merits of the plaintiffs' application for visitation with their grandchildren before deciding whether the jurisdictional requirements of *Roth* were satisfied. After reviewing both the pleading and the evidence presented at the hearing, I conclude that the plaintiffs failed to meet the second *Roth* jurisdictional requirement. I, therefore, concur in the result reached by the majority.

At the outset, I note my agreement with the majority's accurate recitation of the precedent that controls the case before us. My disagreement lies with the majority's conclusion that the trial court improperly "accepted the invitation of the plaintiffs' counsel to hear testimony from the plaintiffs to 'establish the facts.' " Given the procedural history and facts of this case, the court should have considered, not only the pleading, but the

evidence presented at the hearing in order to determine whether the plaintiffs met the *Roth* jurisdictional requirements. If, and only if, the plaintiffs met that burden should the court have proceeded to the merits of the plaintiffs' application for visitation.

In order to explain my departure from the reasoning of the majority, I must expand on the factual and procedural history of this case. On September 7, 2005, the plaintiffs began this proceeding by serving the defendant with an "Order to Attend Hearing and Notice to the Respondent," a "Custody/Visitation Application," a "Motion for Orders before Judgment in Family Case" and an "Automatic Court Orders." The "Custody/Visitation Application," which is designated JD-FM-161 Rev. 2-04, is provided by the judicial branch and available in the Superior Court. This form contains citations to General Statutes §§ 46b-56 and 46b-61, as well as Practice Book §§ 25-3, 25-4 and 25-5. The plaintiffs sought visitation with their grandchildren, the defendant's two minor children, Ciara and Aiden. The plaintiffs selected "box g" on the form, which stated that "Connecticut has the authority to decide this case and should decide this case because . . . [t]he applicant has/had a relationship with the child(ren) that is similar in nature to a parent-child relationship and denial of visitation would cause real and significant harm to the child(ren)."[1]

In a motion filed September 26, 2005, the defendant moved to dismiss the application "for subject matter jurisdiction" pursuant to Practice Book §§ 10-30[2] and

---

[1] The plaintiffs also indicated on the form that "Connecticut is the home state of the child(ren) at the time of the filing of this case. . . . The child(ren) [have] lived in Connecticut for the past six months, or from birth if the child is younger than six months old. . . . The child(ren) and at least one parent have a significant connection to Connecticut and there is substantial evidence in Connecticut concerning the child's present or future care, protection, training and personal relationships."

[2] Practice Book § 10-30 provides: "Any defendant, wishing to contest the court's jurisdiction, may do so even after having entered a general appearance, but must do so by filing a motion to dismiss within thirty days of the

10-31 (a).[3] In her memorandum of law, the defendant argued that "[t]he Court lacks subject matter jurisdiction over the plaintiffs' complaint . . . because it fails, in all respects, to specifically allege the necessary facts. In particular, the complaint contains no specific instances to support a parent-like relationship with the children. It also does not contain any specific instances to support the claim that the lack of visitation will cause the children to suffer real and substantial emotional harm." The plaintiffs did not file an opposition to the defendant's motion. See Practice Book § 10-31 (b).[4] The

filing of an appearance. Except in summary process matters, the motion shall be placed on the short calendar to be held not less than fifteen days following the filing of the motion, unless the judicial authority otherwise directs. Any adverse party may, within ten days of the filing of the motion with the court, file a request for extension of time to respond to the motion. The clerk shall grant the request and cause the motion to appear on the short calendar not less than thirty days from the filing of the request."

[3] Practice Book § 10-31 (a) provides: "The motion to dismiss shall be used to assert (1) lack of jurisdiction over the subject matter, (2) lack of jurisdiction over the person, (3) improper venue, (4) insufficiency of process, and (5) insufficiency of service of process. This motion shall always be filed with a supporting memorandum of law, and where appropriate, with supporting affidavits as to facts not apparent on the record."

[4] A better and more prudent course of action for the plaintiffs would have been to file a memorandum of law objecting to the defendant's motion to dismiss. See Practice Book § 10-31 (b); see also Practice Book § 25-13 (b). Although some sections of our rules of practice previously mandated such a memorandum of law to be submitted, neither Practice Book §§ 10-31 (b) nor 25-13 (b) contain such a requirement. For example, Practice Book § 155, the predecessor to Practice Book § 10-42, stated that "[a]n adverse party who fails timely to file such a memorandum pursuant to this section shall be deemed by the court to have consented to the granting of the motion." See *Hughes* v. *Bemer*, 200 Conn. 400, 402, 510 A.2d 992 (1986). This provision is absent from both Practice Book §§ 10-31 and 25-13.

Moreover, our Supreme Court has previously "afforded trial courts discretion to overlook violations of the rules of practice and to review claims brought in violation of those rules as long as the opposing party has not raised a timely objection to the procedural deficiency." *Schilberg Integrated Metals Corp.* v. *Continental Casualty Co.*, 263 Conn. 245, 273, 819 A.2d 773 (2003). The record does not reveal that the defendant ever raised the issue of the plaintiffs' failure to file an objection. Further, the defendant's counsel specifically invited the plaintiffs to present evidence at the hearing with respect to the *Roth* requirements. In other words, the defendant did not

court interpreted the plaintiffs' application to be a petition seeking visitation under General Statutes § 46b-59[5] and proceeded on that basis. Neither the court nor the defendant challenged the plaintiffs' use of the § 46b-56 application for their purposes.

The court, on November 3, 2005, held a hearing on the defendant's motion. Counsel for the plaintiffs stated at the outset that "the issue in this case will be whether or not my clients satisfy the requirements of *Roth* . . . . In essence, it boils down to whether they are on the right side of the continuum with regard to the two threshold items to justify the limited intrusion in this case." The plaintiffs' counsel then began to explain the reasons for the request for visitation. At this point, counsel for the defendant objected. "I'm not sure that this is relevant. *I mean, if they want to testify as to the threshold requirement, then let them start their*

object to allowing the plaintiffs to remedy the deficiency in their pleading that served as the basis for the defendant's motion to dismiss. In the absence of any objection by the defendant on this basis, or any appellate case law making such a filing mandatory, this oversight by the plaintiffs is not fatal to their claims. See generally *Doe* v. *Board of Education*, 76 Conn. App. 296, 298 n.5, 819 A.2d 289 (2003); cf. *Pepe* v. *New Britain*, 203 Conn. 281, 287–88, 524 A.2d 629 (1987) (requirement under Practice Book § 155, now § 10-42, mandatory); *Hughes* v. *Bemer*, supra, 200 Conn. 402 (same).

[5] General Statutes § 46b-59 provides: "The Superior Court may grant the right of visitation with respect to any minor child or children to any person, upon an application of such person. Such order shall be according to the court's best judgment upon the facts of the case and subject to such conditions and limitations as it deems equitable, provided the grant of such visitation rights shall not be contingent upon any order of financial support by the court. In making, modifying or terminating such an order, the court shall be guided by the best interest of the child, giving consideration to the wishes of such child if he is of sufficient age and capable of forming an intelligent opinion. Visitation rights granted in accordance with this section shall not be deemed to have created parental rights in the person or persons to whom such visitation rights are granted. The grant of such visitation rights shall not prevent any court of competent jurisdiction from thereafter acting upon the custody of such child, the parental rights with respect to such child or the adoption of such child and any such court may include in its decree an order terminating such visitation rights."

*evidence, but their reasons why don't matter at this point in time.* They need to meet a threshold requirement before this court can determine if it has jurisdiction over the matter, and there's a motion to dismiss pending before the court that addresses those issues, and before we start getting into factual issues of why they want to intrude on my client's rights, they need to prove to this court that they have standing and that the court should take jurisdiction over it. So, I object to [the plaintiffs' counsel's] facts that he's presenting to the court at this time." (Emphasis added.) The plaintiffs' counsel subsequently indicated that he was "very well prepared to put on my clients to establish the two prongs of the *Roth* . . . case."

I

The applicable legal principles relating to subject matter jurisdiction are well established. It is axiomatic that "[a] court lacks discretion to consider the merits of a case over which it is without jurisdiction . . . . The subject matter jurisdiction requirement may not be waived by any party, and also may be raised by a party, or by the court sua sponte, at any stage of the proceedings, including on appeal." (Internal quotation marks omitted.) *Pine* v. *Dept. of Public Health*, 100 Conn. App. 175, 180, 917 A.2d 590 (2007); see also *Batte-Holmgren* v. *Commissioner of Public Health*, 281 Conn. 277, 283, 914 A.2d 996 (2007); *West Farms Mall, LLC* v. *West Hartford*, 279 Conn. 1, 15 n.8, 901 A.2d 649 (2006). I agree with the majority that once "the issue of subject matter jurisdiction is raised, it must be immediately acted upon by the court." (Internal quotation marks omitted.) *Federal Deposit Ins. Corp.* v. *Peabody, N.E., Inc.*, 239 Conn. 93, 99, 680 A.2d 1321 (1996); see also *Robbins* v. *Van Gilder*, 225 Conn. 238, 255 n.1, 622 A.2d 555 (1993) (*Berdon, J.*, dissenting); *Gurliacci* v. *Mayer*, 218 Conn. 531, 545, 590 A.2d 914 (1991). A determination in favor of jurisdiction, therefore, must precede any

consideration of the merits. See *Fullerton* v. *Administrator, Unemployment Compensation Act*, 280 Conn. 745, 754, 911 A.2d 736 (2006); see also *Shockley* v. *Okeke*, 92 Conn. App. 76, 85, 882 A.2d 1244 (2005) ("Once it becomes clear that the trial court lacked subject matter jurisdiction to hear the . . . complaint, any further discussion of the merits is pure dicta. . . . Lacking jurisdiction, the court should not deliver an advisory opinion on matters entirely beyond [its] power to adjudicate. . . . Such an opinion is not a judgment and is not binding on anyone." [Citations omitted; internal quotation marks omitted.]), appeal dismissed, 280 Conn. 777, 912 A.2d 991 (2007).

The standard of review applicable to this case is well established. "In an appeal from the granting of a motion to dismiss on the ground of subject matter jurisdiction, this court's review is plenary. A determination regarding a trial court's subject matter jurisdiction is a question of law. When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record. . . . Jurisdiction of the subject matter is the power [of the court] to hear and determine cases of the general class to which the proceedings in question belong. . . . A court has subject matter jurisdiction if it has the authority to adjudicate a particular type of legal controversy." (Internal quotation marks omitted.) *Francis* v. *Chevair*, 99 Conn. App. 789, 791, 916 A.2d 86, cert. denied, 283 Conn. 901, 926 A.2d 669 (2007); see also *Ventres* v. *Goodspeed Airport, LLC*, 275 Conn. 105, 135, 881 A.2d 937 (2005), cert. denied, 547 U.S. 1111, 126 S. Ct. 1913, 164 L. Ed. 2d 664 (2006); *Chiulli* v. *Zola*, 97 Conn. App. 699, 703–704, 905 A.2d 1236 (2006).

The scope of a motion to dismiss vis-a-vis subject matter jurisdiction also is well settled. "Although subject matter jurisdiction may be challenged at any stage

of the proceedings, it has been addressed almost exclusively through a motion to dismiss. A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court. . . . A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . When a . . . court decides a jurisdictional question raised by a pretrial motion to dismiss, it must consider the allegations of the complaint in their most favorable light. . . . In this regard, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader." (Internal quotation marks omitted.) *Bellman* v. *West Hartford*, 96 Conn. App. 387, 393, 900 A.2d 82 (2006). Put another way, "[p]roperly granted on jurisdictional grounds, it essentially asserts that, as a matter of law and fact, a plaintiff cannot state a cause of action that is properly before the court." *Egri* v. *Foisie*, 83 Conn. App. 243, 247, 848 A.2d 1266, cert. denied, 271 Conn. 931, 859 A.2d 930 (2004).

Finally, I note that "[o]ur Supreme Court has determined that when ruling upon whether a complaint survives a motion to dismiss, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader. . . ." *Bailey* v. *Medical Examining Board for State Employee Disability Retirement*, 75 Conn. App. 215, 219, 815 A.2d 281 (2003); see also *184 Windsor Avenue, LLC* v. *State*, 274 Conn. 302, 304 n.3, 875 A.2d 498 (2005); *Neiman* v. *Yale University*, 270 Conn. 244, 250, 851 A.2d 1165 (2004). Simply put, "[i]n determining whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged." (Internal

quotation marks omitted.) *Pritchard* v. *Pritchard*, 281 Conn. 262, 275, 914 A.2d 1025 (2007).

## II

Turning to the facts of the present case, the defendant moved to dismiss the plaintiffs' request for visitation with the defendant's minor children, Ciara and Aiden. At the November 3, 2005 hearing, the threshold issue before the court was whether the plaintiffs had met the two jurisdictional requirements mandated by *Roth*. The Supreme Court stated in *Roth*: "First, the petition must contain specific, good faith allegations that the petitioner has a relationship with the child that is similar in nature to a parent-child relationship. The petition must also contain specific, good faith allegations that denial of the visitation will cause real and significant harm to the child. As we have stated, that degree of harm requires more than a determination that visitation would be in the child's best interest. It must be a degree of harm analogous to the kind of harm contemplated by [General Statutes] §§ 46b-120 and 46b-129, namely, that the child is neglected, uncared-for or dependent. The degree of specificity of the allegations must be sufficient to justify requiring the fit parent to subject his or her parental judgment to unwanted litigation. Only if these specific, good faith allegations are made will a court have jurisdiction over the petition." (Internal quotation marks omitted.) *Roth* v. *Weston*, supra, 259 Conn. 234–35.

Rather than limit the consideration solely to the pleading filed by the plaintiffs, the defendant acquiesced by indicating that she had no objection to letting the plaintiffs present evidence in order to buttress the claims alleged in the application for the purposes of whether the jurisdictional requirement had been met. Counsel for the defendant stated: "*I mean, if they want to testify as to the threshold requirement, then let them*

*start their evidence,* but their reasons why don't matter at this point in time. They need to meet a threshold requirement before this court can determine if it has jurisdiction over the matter, and there's a motion to dismiss pending before the court that addresses those issues, and before we start getting into factual issues of why they want to intrude on my client's rights, they need to prove to this court that they have standing and that the court should take jurisdiction over it." (Emphasis added.) The defendant not only failed to object to the proceeding but actually invited such testimony to enable the court to make the required ruling under *Roth.*[6]

It is well established in our jurisprudence that an evidentiary hearing may be appropriate with respect to a motion to dismiss. "When issues of fact are necessary to the determination of a court's jurisdiction, due process requires that a trial-like hearing be held, in which an opportunity is provided to present evidence and to cross-examine adverse witnesses." (Internal quotation marks omitted.) *Fairfax Properties, Inc.* v. *Lyons,* 72 Conn. App. 426, 432, 806 A.2d 535 (2002); see also *Golodner* v. *Women's Center of Southeastern Connecticut, Inc.,* 281 Conn. 819, 826, 917 A.2d 959 (2007) (when resolution of disputed fact necessary to determine existence of standing raised by motion to dismiss, hearing may be held in which evidence taken); *Gordon* v. *H.N.S. Management Co.,* 272 Conn. 81, 92, 861 A.2d 1160 (2004); *Schaghticoke Tribal Nation* v. *Harrison,* 264 Conn. 829, 833, 826 A.2d 1102 (2003); *Lawton* v. *Weiner,* 91 Conn. App. 698, 705–706, 882 A.2d 151 (2005) (hearing *required* only when motion to dismiss raises genuine issue of material fact); *Capasso Restoration, Inc.* v. *New Haven,* 88 Conn. App. 754, 761, 870 A.2d 1184 (2005) (same).

---

[6] The defendant also did not object to the plaintiffs' failure to file an opposition to her motion to dismiss. See footnote 4.

Neither *Roth* nor *Crockett* v. *Pastore*, 259 Conn. 240, 789 A.2d 453 (2002), decided specifically that our trial courts would be *prohibited* from allowing petitioning parties to supplement their pleadings under these circumstances. In fact, *Roth*, *Crockett* and *Clements* v. *Jones*, 71 Conn. App. 688, 803 A.2d 378 (2002), specifically allowed, in effect, supplementation and consideration of the evidence placed before the trial court because of manifest unfairness, in view of the then newly stated threshold requirements. In other words, *Roth*, *Crockett* and *Clements* did not categorically prohibit supplementation, nor did they indicate that no other type of "manifest unfairness" would warrant doing so. This interpretation is supported by the fact that the defendant, the type of party whom *Roth* and its progeny sought to protect from unwanted intrusion by relatives and nonrelated parties alike, encouraged both the plaintiffs and the court to proceed down this path.[7] I conclude, therefore, that the proper course of action under those circumstances was for the court to consider both the plaintiffs' pleading and the evidence presented at the hearing in order to determine if the threshold requirements of *Roth* were met. Because the court improperly bypassed this prerequisite and decided the merits of the plaintiffs' request for visitation, we must resolve the issue of whether the court

[7] I do not mean to suggest that the parties may stipulate to subject matter jurisdiction. It is often stated that "[t]he parties cannot confer subject matter jurisdiction on the court, either by waiver or by consent." (Internal quotation marks omitted.) *ABC, LLC* v. *State Ethics Commission*, 264 Conn. 812, 823, 826 A.2d 1077 (2003); see also *Kozolowski* v. *Commissioner of Transportation*, 274 Conn. 497, 502, 876 A.2d 1148 (2005); *Webster Bank* v. *Zak*, 259 Conn. 766, 774, 792 A.2d 66 (2002). In other words, although parties may stipulate to facts that would support a determination in favor of jurisdiction, they cannot directly agree to confer jurisdiction on the court. See generally *Fox* v. *Zoning Board of Appeals*, 84 Conn. App. 628, 637, 854 A.2d 806 (2004). In the present case, the parties merely agreed to allow the record to be supplemented so that it could be determined if the court had jurisdiction pursuant to *Roth*.

had jurisdiction. This is proper because a determination of subject matter jurisdiction, as I previously noted, presents a question of law, subject to plenary review on appeal, and must be determined in every case, once the issue has been raised. Accordingly, I will examine the events of the November 3, 2005 hearing.

At the conclusion of the hearing, the court stated that the relationship between the plaintiffs and the minor children "might have been [similar to a parent-child relationship] some years ago, but clearly it is not at this date. And there also has to be clear and convincing evidence that denial of visitation will cause real and significant harm to the children. . . . As I say, I believe that grandparent visitation is a good thing, but I don't think that I have heard enough evidence here, including the allegations of abuse,[8] which I don't believe rose to any kind of proof that would be required in a court in this state to be found [an] abuse of [the] children."

The basis for the court's denial of the plaintiffs' motion for visitation appears to be the testimony of the plaintiffs and Kristin Ericcson, the aunt of the minor children. Gene Fennelly testified that he had a parent-child relationship with his grandchildren.[9] This relationship began in April, 1997, when the defendant, Steven Fennelly, who is the father of the children, and Ciara moved into the home of Ericsson and her husband in New Hampshire. This living arrangement continued until August, 1998. During this period of time, Gene Fennelly visited Ciara on a daily basis, anywhere from fifteen minutes to several hours.

In August, 1998, the defendant relocated to Ansonia to attend school on a full-time basis, and Steven Fennelly and Ciara moved into the plaintiffs' home, which

---

[8] See footnote 14.

[9] The defendant's counsel objected to this testimony on the ground that it called for a legal conclusion. The court overruled the objection and allowed the statement to be introduced into evidence.

also was in New Hampshire. Gene Fennelly would get Ciara ready for day care every morning during the work-week and, along with his wife and son, put her to bed at night. The three adults also provided discipline and training for Ciara. Gene Fennelly also afforded financial support during this time, including establishing a bank account for Ciara.[10] Gene Fennelly indicated that he also provided love to Ciara, which she returned.

In January, 1999, Steven Fennelly and Ciara joined the defendant in Ansonia. Gene Fennelly maintained his relationship with Ciara by visiting on weekends, both in Connecticut and in New Hampshire. He also spoke with Ciara on the telephone during the week. These discussions pertained to her schoolwork, the events of her day and plans for seeing each other again. He continued to display his affections for Ciara, which she reciprocated.

In August, 2000, Aiden was born, and Gene Fennelly saw him "at least every three weeks." According to Gene Fennelly, whenever Aiden saw him, he immediately wanted to be with his grandfather, bypassing any other adults who were present. Gene Fennelly also stated that he treated the defendant "like a daughter."

In 2003 and 2004, Steven Fennelly's drug problem returned.[11] Although the plaintiffs initially supervised Steven Fennelly's visits with the minor children, the defendant requested that this arrangement end. The plaintiffs attempted to initiate contact with the children. For example, in July, 2004, the plaintiffs drove to Connecticut to deliver birthday presents to Ciara. They waited at the defendant's residence, and when she

[10] Gene Fennelly further indicated that he supplied Steven Fennelly and the defendant with two separate payments of approximately $20,000 in order for them to purchase two houses. He also provided financial assistance when it was needed.

[11] Steven Fennelly also encountered certain legal difficulties, including violation of restraining orders.

arrived, Aiden ran over to Gene Fennelly. After taking the children inside the residence, the defendant expressed her strong displeasure with the plaintiffs. The minor children then came outside and spent about ten minutes with the plaintiffs. Aiden wanted to show Gene Fennelly his new room, but the defendant refused to allow this. Ciara would not look at the plaintiffs and did not open the wrapped presents. The defendant indicated that the visit was over, and Aiden "jumped off the stairs and into [Gene Fennelly's] arms," saying that he missed him and loved him. The defendant pulled Aiden away and told him to go inside.

A similar event occurred in the fall of 2004. The plaintiffs had telephoned the defendant and asked to see the minor children under any circumstances. The defendant had refused this request. The plaintiffs decided to attend one of Ciara's soccer games in Connecticut. They approached the defendant and Aiden. When the defendant saw the plaintiffs, she stated that she did not want them at the game. Aiden exclaimed that he wanted to see his grandfather, jumped into his arms and asked why he had not called or visited. The defendant placed her arms on Aiden and pulled him away. Gene Fennelly described the defendant as being "furious."

Gene Fennelly also stated that in early 2005, Steven Fennelly had a supervised visit with the children at Central Connecticut State University. Gene Fennelly waited outside. When Aiden exited the building, he saw his grandfather and ran toward him. The defendant restrained Aiden and told him to get into her motor vehicle. Aiden began crying and stated that he wanted to see "grampy."

Sharon Fennelly testified that she had a "terrific relationship" with Ciara. She often picked her up from preschool and took her grocery shopping, to the park and for ice cream. She also would feed Ciara dinner,

read to her at night and put her to bed. Ciara asked her questions about "growing up" and the types of activities she would be able to do when she reached a certain age. After Ciara moved to Connecticut, Sharon Fennelly maintained contact with Ciara. Finally, Ericsson testified that she had observed the plaintiffs take care of Ciara, who was always very excited to spend time with them.

## III

The threshold question for this court is whether, on the basis of the pleading and the facts presented at the evidentiary hearing, the plaintiffs met their initial burden of establishing the *Roth* jurisdictional requirements. On the basis of my review of the record, I must conclude that the plaintiffs failed to meet the second part of the *Roth* test.[12] As noted previously, "[t]he petition must also contain specific, good faith allegations that denial of the visitation will cause real and significant harm to the child. . . . [T]hat degree of harm requires more than a determination that visitation would be in the child's best interest. It must be a degree of harm analogous to the kind of harm contemplated by §§ 46b-120 and 46b-129, namely, that the child is neglected, uncared-for or dependent. (Internal quotation marks omitted.) *Roth* v. *Weston*, supra, 259 Conn. 235.

[12] The issue of whether the plaintiffs have met the first part of the *Roth* test presents an interesting and difficult question. Some of the facts adduced at the evidentiary hearing strongly support a parent-like relationship, particularly with respect to Ciara. Even if I were to assume arguendo that such a relationship did exist, it is not clear what effect the defendant's termination of contact between the minor children and the plaintiffs should have with respect to whether such a relationship had ended. It is anomalous to penalize grandparents or other relatives, who may have had the required relationship in the past, for being unable to continue it when a parent, for whatever reason, has terminated contact between relative and child. Because, however, the present case may be resolved on the basis of the second *Roth* requirement, I leave the resolution of this extraordinarily difficult legal question for another day.

In the present case, the claims of harm do not rise to the "admittedly high hurdle" created by *Roth*. Id., 229. The plaintiffs' allegations and testimony, in fact, support a type of "harm" not recognized by *Roth* and its progeny, that is, harm to children from deprivation of a close relationship with family members who have been an integral part of their lives. Even if maintaining such a relationship might be in a child's best interest, the virtual neglect test of *Roth* does not acknowledge it. Only the type of harm that is similar to neglect or uncared for status is recognized. The evidence of "harm" produced by the plaintiffs does not directly address the *Roth* type of harm.[13] With respect to Ciara, the allegations of harm consisted of testimony that in July, 2004, she did not want to open her birthday gifts and that she did not actively respond to the plaintiffs' questions.[14] Sharon Fennelly also claimed that when Ciara was younger, she would be in fear when the defendant screamed or yelled at her.

With respect to Aiden, the plaintiffs offered slightly more evidence of harm in support of their application. Gene Fennelly testified that whenever Aiden saw him, he would become excited and attempt to move toward his grandfather. This would agitate the defendant, and she would restrain the child and raise her voice. These actions caused Aiden to be hurt and upset. This happened on several occasions, and each time, Aiden would be visibly disturbed when he was restrained from being with his grandfather.

Even if I were to consider, in addition to the explicit testimony of the plaintiffs and Ericsson, the implicit

---

[13] The practical difficulties of producing evidence of *Roth* type of harm in situations in which a parent has effectively prevented close relationships from continuing are obviously highly problematical and beyond the limits of judicial resolution.

[14] Sharon Fennelly and Ericsson also testified that at one point, they noticed "handprint marks" on her arm. There was absolutely no evidence, however, connecting the mark to the actions of the defendant.

suggestion of the plaintiffs that the children were harmed by the lack of contact with their grandparents, it is my view that such harm falls well short of the standard enunciated in *Roth*. These assertions, express and implicit, simply do not amount to the requisite level of real and significant harm, i.e., neglect, uncared for or dependent, that our Supreme Court has stated is necessary to satisfy the second requirement set out in *Roth*. As a result of the failure to satisfy this requirement, the holding of *Roth* applies, and the court lacked subject matter jurisdiction to consider the application for visitation filed by the plaintiffs.

I respectfully concur in the judgment.